JOHN YORK'S ADM'R v. NICHOLAS MCNUTT AND OTHERS.

The assignee of a bond for title takes it subject to all the defences to which it may have been liable in the hands of the first obligee, notwithstanding a valuable consideration may have been given, and there may have been no notice of the equity or defence against the bond for title.
See this case as to delay in suing for specific performance of a bond to convey lands.

Appeal from De Witt. In 1842 Nicholas McNutt gave to Thomas M. Hughes a bond for title to eight hundred and thirty-four acres out of said McNutt's headright league, so soon as he, McNutt, should obtain from the Government a patent to said league. The bond was recorded in De Witt county, where the land lay, in 1848 ; in 1844, Hughes trans-

ferred to Coe, and in 1845 Coe transferred to John York, appellant's intestate; in 1845 McNutt obtained a patent for the league of land; in 1850 McNutt resold the land to Means; and Means afterwards sold it to Wimbish; in 1854 appellant, as administrator of York, brought this suit against McNutt, Means and Wimbish, praying a specific performance from McNutt, and praying that his title to the land be quieted, &c. McNutt pleaded that the consideration for the bond was money won at cards; that there was cheating in the game, &c., and that McNutt had repudiated the bond immediately after making it. On the trial appellant, who was plaintiff in cause below, gave in evidence without objection, the bond from McNutt to Hughes, with the certificate of record, the transfer from Hughes to Coe, and from Coe to York, and the patent from the Government to McNutt, and the deed from McNutt to Means, and it was admitted that Means sold to Wimbish the same land that he, Means, had purchased from McNutt, at a date subsequent to the purchase by Means from McNutt. Plaintiff then rested. McNutt then proved that the consideration of the bond was money won by Hughes from McNutt at cards, and that there was cheating in the game, as stated in his plea.

Plaintiff then asked the Court to give the jury the following written instructions, which were refused:

If the jury believe from the evidence, that McNutt did not repudiate the bond, nor use any diligence to put the world upon their guard against it, but suffered it to go into the hands of an innocent purchaser for a valuable consideration, without notice, he is bound by his bond.

If the jury believe from the evidence, that Means and Wimbish purchased with notice of the previous sale, they cannot hold the land in opposition to the plaintiff.

The Court gave the following instructions at the request of defendant McNutt:

If the jury find from the evidence, that the bond for the land

in controversy was procured from the defendant McNutt by Thomas M. Hughes by fraud, and without a good and valid consideration therefor, the bond is void, and they will find for the defendants.

If the jury believe from the evidence, that said Hughes, on or about the dáte of said bond, won a sum of money from the defendant McNutt, at a game of cards, and that the said bond was given by McNutt to said Hughes in payment and discharge of said sum of money so won at cards, the said bond was void and not binding on the said McNutt, and they will find for the defendants.

*R. E. Williams,* for appellant. Whenever the fraud consists in the object or conduct of the parties to the instrument, and does not attach to its execution, it is voidable only, and cannot be set aside as against a subsequent bona fide purchaser. (James v. Brewer, 2 Pick. 184.) An innocent purchaser under a forged will is protected in equity, against the heir at law. (Jones v. Pawles, 3 My. & K. 581.) If a feme covert or minor knowing their title to property, lie by and permit innocent persons to purchase without notice, equity will compel such person to convey to the purchaser. (Savage v. Foster, 9 Mod. 35.) An innocent purchaser for a valuable consideration, without notice of any defect in the title of his vendor, is a peculiar favorite of a Court of Equity. The doctrine is fully discussed in the notes to Bassett v. Nasworthy, in White and Tudor's leading cases in equity, Hare & Wallace edition, vol. 2nd, part 1st, page 34 et seq. In the present case McNutt suffered Coe and York to pay their money for the land, without any effort to prevent it; and it is a maxim of law as well as common sense and common honesty, that where one of two innocent persons has to suffer, the loss must fall upon him who committed the first fault. In the present case, the fault all lies upon McNutt in silently suffering his bond, that he now

alleges was obtained by fraud, to pass into the hands of an innocent purchaser for a valuable consideration without notice.

See also Sherley v. Fagg, 1 Chan. Cas. 68; Harcourt v. Knowl, 2 Term, 159.

*Cunningham* and *Holt*, for appellees.

HEMPHILL, CH. J.   The appellant, in his argument, states that the only point in the record is, whether the illegality of the consideration of the bond is such as to avoid it in the hands of an innocent purchaser without notice, the bond never having been repudiated by McNutt until the sale from him to Means, which was years after the bond came by assignment into the hands of York.   The point involves important considerations, and under a more full discussion might require an extended examination.   For the present, the inquiry will be restricted to such views as are essential to the disposition of the question.

It must be admitted that there is great apparent hardship in affecting subsequent vendees with all the equities, though latent, which may subsist between the vendor and the first vendee, where the sale is only of the equitable title, and especially so where the rule is well established, that a subsequent purchaser without notice will be protected against the equities of the vendor, or those claiming in privity under him.   But it appears very clearly from the authorities, that the protection given to purchasers for valuable consideration without notice, extends only to cases where they have taken a conveyance, or, in other words, where they have purchased the legal title. (Dart on vendors, p. 462; 4 Dess. 274; 8 Cranch, 462; 10 Peters, 177 ; 7 Peters, 252.)   But where the purchase is only of the equitable title, it is taken with all its imperfections and equities, notwithstanding a valuable consideration many have been given, and there may have been no notice of the equity or defence against the title.   (12 S. & R., 389 ; 2 Watts, 459.)

In the case of Chew v. Barnett, 12 L. & R., 380, the Court say that "when it is asserted that a purchaser for a valuable "consideration takes the title free of every trust or equity of "which he has no notice, it is intended of the purchase of a "title perfect on its face ; for every purchaser of an imperfect "title takes it with all its imperfection on its head. It is his "own fault that he confides in a title which appears defective "and he does so at his peril."

Under this view of the law, the title of Hughes and of his assignees, Coe and York, was but a title to go into equity to have the legal estate conveyed, and in the hands of the assignees was subject to all the defences against the original vendee. How far this doctrine is modified by our registry acts, as against sales from the vendor of which the vendee of the equitable title had no notice, need not be considered. The question does not arise in this case. The equity is claimed by the vendor himself. The claim is not set up by derivative vendees from him, at least such veendees do not claim by sale prior in point of time to the execution of the bond. The equity of the vendor arises out of the original transaction between himself and his primitive vendee, Hughes, and the assignees of Hughes having only his imperfect title, can set up no rights as against the original equities of the vendor, which could not have been maintained by Hughes. The laws of registry, which might, in a proper case, be invoked as against derivative vendees, whose titles have not been recorded, have no bearing on the case.

The facts of this case show the necessity of some limitation being fixed by law to actions as well for specific performance as for rescission of contracts. Had the plaintiff delayed until the death of the witness who proved the want of consideration, he must of necessity have been entitled to a decree for a specific performance ; and that the defendant has been enabled, at this late day, to avoid his contract, is allowing a very long period for the practice, in effect, of deception on the commu-

nity, who generally rely on the acts of parties not denied or repudiated by those in interest.

There being no error in the judgment, ordered that the same be affirmed.

Judgment affirmed.