**Pedro DE LA FUENTE, et al., Appellants,**

v.

**HOME SAVINGS ASSOCIATION, Appellee.**

No. 13–83–014–CV.

Court of Appeals of Texas, Corpus Christi.

March 15, 1984.

Selvino Padilla, Texas Rural Legal Aid, Inc., Edinburg, for appellants.

LaMonte Scott Freerks, Pena, McDonald, Prestia & Ibanez, Edinburg, for appellee.

Before KENNEDY, BISSETT and GONZALEZ, JJ.

## OPINION

KENNEDY, Justice.

This is an appeal from a suit on a note brought by appellee, Home Savings, against appellants, Pedro and Paula de la Fuente. The transaction underlying the note was the sale of materials and services for the installation of aluminum siding for the de la Fuentes' home. We reverse and render judgment for appellants.

Trial was to the court, and findings of fact and conclusions of law were filed. The court's findings of fact are summarized as follows. In late April or early May of 1978, Roberto Gonzales, a representative of Aluminum Industries, Inc., visited the de la Fuente home to sell them aluminum sid-ing. As a result, on May 3, 1978, the de la Fuentes executed, in their residence, a number of documents, including a contract and promissory note for improvements to their home. The contract granted a first lien on appellants' home. The total contract amount was $9,138.24, with 96 monthly installments of $95.19 and an annual percentage rate of 12%. The contract included a trust deed to Aluminum Industries which granted a first lien on the de la Fuentes' residence. Aluminum Industries, Inc. is no longer in existence.

Appellants, by their fourth, sixth and seventh points of error, complain of violations of the Texas Consumer Credit Code, TEX.REV.CIV.STAT.ANN. art. 5069, et seq. (Vernon 1971).

By their fourth point of error, appellants assert that the trial court erred in concluding that the lien taken in the transaction was not unlawful and, therefore, there was no violation of the Texas Consumer Credit Code. The version of art. 5069–6.05 of the Texas Consumer Credit Code in effect on May 3, 1978 read:

Art. 6.05 Prohibited Provisions

No retail installment contract ... shall:

(7) Provide for or grant a first lien upon real estate to secure such obligation, except, (a) such lien as is created by law upon the recording of an abstract of judgment or (b) such lien as is provided for or granted by a contract or series of contracts for the sale or construction and sale of a structure to be used as a residence so long as the time price differential does not exceed an annual percentage rate of 10 percent.

Act of May 4, 1977; ch. 104, § 1, 1977 Tex.Gen.Laws, Local and Spec. 212, *amended by* Act of May 8, 1981, ch. 111, § 18, 1981 Tex.Gen.Laws, Local and Spec. 284. *See* TEX.REV.CIV.STAT. ANN. art. 5069–6.05 (Vernon Supp.1984).

■ The trial court, in the findings of fact, found that the contract for Labor and Materials and Trust Deed granted a first lien on appellants' residence. We agree. *See Jim Walter Homes v. Chapa*, 614

S.W.2d 838 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The contract and Trust Deed clearly grant a lien, and both the credit report filled out by Robert Gonzalez, the salesman, and the undisputed testimony of Pedro de la Fuente show that there was no lien on the appellants' home at the time of the transaction. However, even if we did not agree with this finding, it was not challenged and is binding upon the appellate court. *Texas Real Estate Commission v. Hood*, 617 S.W.2d 838 (Tex. Civ.App.—Eastland 1981, writ ref'd n.r.e.); *Bilek v. Tupa*, 549 S.W.2d 217 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.); *McKenzie v. Carte*, 385 S.W.2d 520 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). The retail installment contract signed by the de la Fuentes is in violation of the Texas Consumer Credit Code, art. 5069–6.05 in that the contract provided for a first lien on the de la Fuentes' home. *See Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249 (Tex. Civ.App.—San Antonio 1978, writ ref'd n.r. e.).

▮▮▮▮ Appellee asserts that, even if the contract is in violation of the Credit Code, appellee is not liable because of its status as a holder in due course under TEX.BUS. & COM.CODE ANN. § 3.302 (Vernon 1968). The trial court found in its conclusions of law both that appellee, as an assignee of the contract, is derivatively liable for all claims against the contract and that appellee is not liable to appellants on the counterclaim because of its status as a holder in due course of appellants' note. We agree that an obligor may assert against the assignee the defenses he could have asserted against the assignor. *York v. McNutt*, 16 Tex. 13, 14 (1856); *Glass v. Carpenter*, 330 S.W.2d 530 (Tex.Civ.App.— San Antonio 1959, writ ref'd n.r.e.); 7 Tex. Jur.2d Assignments § 52 (1980); J. Calamari & J. Perillo, Contracts § 269 (1970). However, we disagree that appellee was entitled to the protection of a holder in due course of a negotiable instrument, because (1) the holder in due course doctrine has been abolished in consumer credit transactions by FTC regulations; and, (2) the appellee did not conform to the notice requirements of the Texas Credit Code so as to cut off the rights of action and defenses of the buyer. The note in question contained a notice in bold face type which reads in part:

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF....[1]

This FTC Rule, subjecting the holder of the note to the claims and defenses of the debtor, is in direct conflict with the doctrine of the holder in due course.[2] The Federal Courts have stated, without so holding, that the effect of this FTC Rule is to abolish the holder in due course doctrine. *Federal Trade Commission v. Winters National Bank & Trust Co.*, 601 F.2d 395,

---

1. This language is included in a great number of notes of this type because of Federal Trade Commission requirements. "In connection with any sale or lease of goods to consumers, in or affecting commerce ... it is [an] unfair or deceptive act or practice ... for a seller to: (a) take or receive a consumer credit contract which fails to contain" the above quoted language in at least ten point bold face type. 16 C.F.R. § 433.2 (1983).

2. We are aware of our opinion in *Lundquist Buick Opel, Inc. v. Wikoff*, 659 S.W.2d 466 (Tex. App.—Corpus Christi 1983, no writ), wherein we said:

> The assignee of the seller would be in the position of a holder of the note and security in due course, absent any terms in the assignment which would not render the assignee such a holder, since the assignee would not have had any dealings, directly or indirectly with the buyer, but would have simply purchased the commercial paper for a valuable consideration.

> However, in that case we were discussing the rights of the buyer and seller of the merchandise, and there was no actual assignee and no real possibility of a holder in due course.

397 (6th Cir.1979).[3] *National Automobile Dealers Association v. Federal Trade Commission*, 421 F.Supp. 31, 33 (M.D.La. 1976).[4] *See also* J. White and R. Summers, Uniform Commercial Code § 14–8 (2d Ed. 1980), T. Quinn, Uniform Commercial Code Commentary and Law Digest § 3–302[A][7][a] (1978); Anderson, Uniform Commercial Code § 3–302:29 (2d Ed.Supp. 1981); F. Hart and W. Willier, Commercial Paper Under the Uniform Commercial Code, Bender's Uniform Commercial Code Service Vol. 2 § 11.08 (1983); S. Kanwit, Federal Trade Commission, Vol. 2, Shepard's Regulatory Manual Series, § 19.08 (1983); Note, the new FTC Trade Regulation Rule on Holder in Due Course. Preservation of Consumers' Claims and Defenses, 13 Houston L.Rev. 789 (1976).

The FTC, in its Statement of Basis and Purpose, specifically named the holder in due course doctrine as the evil addressed by 16 C.F.R. § 433.2. "[A] consumer's duty to pay for goods and services must not be separated from a seller's duty to perform as promised …" 40 Fed.Reg. 53,506, 53,523 (November 18, 1975). The FTC intended the Rule to compel creditors to either absorb the cost of the seller's misconduct or return them to sellers. 40 F.R. at 53,523. The FTC "reach[ed] a determination that it constitutes an unfair and deceptive practice to use contractual boiler plate to separate a buyer's duty to pay from a seller's duty to perform." 40 F.R. at 53,524. The effect of this Rule is to "give the courts the authority to examine the equities in an underlying sale, and it will prevent sellers from foreclosing judicial review of their conduct. Seller *and creditors* will be responsible for seller misconduct." 40 F.R. at 53,524 (emphasis added). It was clearly the intention of the FTC Rule to have the holder of the paper bear the losses occasioned by the actions of the seller; therefore, the benefits of the holder in due course doctrine under TEX. BUS. & COM.CODE ANN. § 3.302 are not available when the notice required by the FTC in 16 C.F.R. § 433.2 is placed on a consumer credit contract.

■ In addition, the holder of a note subject to the Credit Code has an independent duty to ensure that the retail installment contract conforms to the statutory requirements of the Credit Code. Art. 5069–6.07 of the Credit Code provides in part:

> No right of action or defense of a buyer arising out of a retail installment transaction which would be cut off by negotiation, shall be cut off by negotiation of the retail installment contract or retail charge agreement to any third party unless such holder acquires the contract relying in good faith upon a certificate of completion or certificate of satisfaction, if required by the provisions of Article 6.06; and *such holder gives notice of the negotiation to the buyer* as provided in this Article, and within thirty days of the mailing of such notice receives no written notice from the buyer of any facts giving rise to any claim or defense of the buyer. (Emphasis added)

*See* TEX.REV.CIV.STAT.ANN. art. 5069–8.01 (Vernon Supp.1984); *Horn v. Nationwide Financial Corp.*, 574 S.W.2d 218 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.) (interpreting art. 5069–7.07(b) to impose this duty).

■ We find that appellee is liable under the Texas Consumer Credit Code as a "person who violates this Subtitle … by (ii) committing any act or practice prohibited by this Subtitle …." TEX.REV.CIV. STAT.ANN. art. 5069–8.01(b) (Vernon Supp.1984). Appellee is therefore liable to appellant under art. 5069–8.01(b) for an amount equal to twice the time price differential or interest contracted for, charged, or received but not to exceed $4,000 in a transaction in which the amount financed is

---

3. "[T]he effect of this Rule is, of course, to strip the ultimate holder of the paper of its traditional status as a holder-in-due-course and to subject it to any potential defenses which the purchaser might have against the seller."

4. "The effect of this Rule is to eliminate the applicability of the holder-in-due-course defenses in cases of consumer credit transactions covered by the regulations."

in excess of $5,000 and reasonable attorneys' fees fixed by the court. Appellants' fourth point of error is sustained.

■ By their sixth point of error, appellants complain of the trial court's finding that appellants had not been promised compensation for referrals of additional customers in violation of TEX.REV.CIV.STAT. ANN. art. 5069–6.02(5)(e) (Vernon Supp. 1984). This statute requires such promises to be disclosed in the writings of the transaction. There was conflicting testimony on this issue. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960). We have reviewed the evidence, find it sufficient, and will not disturb the trial court's ruling.

Appellants' sixth point of error is overruled.

Appellants' seventh point of error is that the trial court's finding that appellants had not signed the certificates of completion prior to the work being completed, in violation of TEX.REV.CIV.STAT.ANN. art. 5069–6.06(3) (Vernon 1971), was against the great weight and preponderance of the evidence.

The evidence of the date on which the certificate was signed consisted of duplicate copies of (1) the certificate showing a "date signed" of July 3, 1978; (2) Mr. de la Fuente's testimony that he had signed documents on only one day, that being approximately May 3, 1978; (3) Mr. de la Fuente's testimony that he was in California working during the months of June and July of 1978; (4) Mr. de la Fuente's Migrant Worker's Statement indicating that he would be in California during those months; (5) the testimony of Alfonso Rodriguez that, although he had seen all the documents signed by the appellants in his presence, he did not see appellants sign a certificate of completion; (6) Robert Gonzalez' testimony that he went to the appellants' residence twice on May 3, 1978, and that appellants signed documents on both occasions; and (7) Mr. de la Fuente's testimony that he only signed papers on one occasion and that on that occasion Mr. Rodriguez was not present.

From the evidence, we conclude that there are four possible times when the certificate of completion could have been signed: (1) on July 3, 1978, as noted on the certificate; (2) on May 3, 1978, in the presence of Mr. and Mrs. Gonzalez, when the handwritten contract was signed; (3) later, on May 3rd when Mr. Gonzalez returned with Mr. Rodriguez; and, (4) on an unspecified date, not May 3rd or July 3, 1978.

■ The trial court found both that the certificate of completion for the work was not signed by the de la Fuentes prior to the completion of the work on the de la Fuentes' residence and that the certificate was not signed by Pedro de la Fuente on July 3, 1978, the date of the certificate, as Mr. de la Fuente was in California on that date. When findings of fact are challenged and the appellate court has a complete statement of facts, the trial court's findings of fact are not binding on the appellate court. *Swanson v. Swanson*, 148 Tex. 600, 228 S.W.2d 156 (1950); *Irrigation Construction Company v. Motheral Contractors, Inc.*, 599 S.W.2d 336 (Tex.Civ. App.—Corpus Christi 1980, no writ). The Court of Appeals will uphold the trial court's findings of fact, unless they are manifestly erroneous and without any evidence to support them or are so against the great weight and preponderance of the evidence as to be manifestly wrong. *S & S Wholesale Supply v. Los Cedros., Inc.*, 628 S.W.2d 493 (Tex.App.—Corpus Christi 1982, no writ). We must then determine, considering the evidence as presented in the statement of facts as a whole, if the finding of the trial court that the certificate of completion was not signed prior to the work being completed is so against the great weight and preponderance of the evidence as to be manifestly wrong.

We know of no measure of the weight of the evidence (unless the witnesses on the evidential facts are counted) other than the feeling of probability which it engenders. The problem of proof cannot be resolved scientifically by quantitative analysis. Preponderance is not alone determined by the number of witnesses testifying to a particular fact or state of facts. It may occur that the statement, or the superior knowledge of the subject matter testified to, of one or a few witnesses may be of more importance, and be relied upon with a greater degree of assurance than that of greater number; and the testimony of the witnesses are oftentimes strengthened or weakened by other facts and circumstances disclosed by the evidence.

*City of Lubbock v. Thiel*, 352 S.W.2d 799, 800 (Tex.Civ.App.—Amarillo 1961, writ ref'd n.r.e.).

▇▇▇ Applying the test for insufficient evidence as set out in point of error number six above, and having considered all of the evidence regarding the date the certificate of completion was signed and the findings of fact of the trial court, we hold that the finding of the trial court that the certificate was not signed before the work was completed is against the great weight and preponderance of the evidence. Of the four possible times the certificate could have been signed, there is no evidence that it was signed on an unspecified date, not May 3rd or July 3, 1978; and there is sufficient evidence to support the trial court's finding that it was not signed by Pedro de la Fuente on July 3, 1978. These facts and circumstances, together with the remaining evidence, lead to the conclusion that the trial court's finding that the certificate of completion was not signed prior to the work being completed is manifestly wrong, no matter which witness or witnesses are believed. Therefore, we would set aside this finding and order a new trial; however, appellants are entitled to only a single recovery under the Credit Code. TEX.REV.CIV.STAT.ANN. art. 5069–8.01(g) (Vernon Supp.1984). Because

of our disposition of the fourth point of error, a new trial is not necessary.

Appellants' seventh point of error is sustained.

Appellants, by their fifth point of error, complain of a violation of the Home Solicitation Sales Act in that the obligation was assigned within five days of its execution. The trial court found that this transaction met all the requirements of and is governed by the Home Solicitation Sales Act, TEX.REV.CIV.STAT.ANN. art. 5069–13.01 *et seq.* (Vernon Supp.1984). The Home Solicitation Sales Act provides:

"Violations

(a) It shall constitute a deceptive trade practice and a violation of this Act for any merchant to: ...

(6) negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased; ...

(b) Any sale or contract entered into in a home solicitation transaction in violation of this Act as set out in Subsection (a) of this section is void and unenforceable.

(c) Any merchant who violates a provision of this Act is liable to the consumer for any actual damages suffered by the consumer as a result of the violation, attorneys' fees reasonable in relation to the amount of work done, and court costs. TEX.REV.CIV.STAT.ANN. art. 5069–13.03 (Vernon Supp.1983).

Plaintiff's original petition and plaintiff's first amended original petition both contained the following provisions:

"II.

*On May 3, 1978,* Defendants and Aluminum Industries, Inc. executed a written contract in Hidalgo County, Texas for labor and materials and trust deed for home improvements to be made on Defendants' home, in Pharr, Texas, according to plans and specifications set out in the agreement and in which Defendants

agreed to pay the total sum of $9,138.24 to Aluminum Industries, Inc. or its assigns in consideration, said sum to be paid in installments according to the following schedule: no cash down and the balance to be payable in 96 equal successive monthly installments of $95.19 each
. . . .

## VI.

*On May 3, 1978*, Aluminum Industries, Inc., for value received, assigned, transferred and set over to Gulf Republic Service Corporation of Houston, Texas, the aforementioned Retail Installment Contract, and the Note together with all its right, title, and interest in and to the Consumer goods and other property described in the contract.

## VII.

On July 6, 1978, Gulf Republic Service Corporation for value received, assigned, transferred and set over to Home Savings Association of Houston, Texas, the aforementioned Retail Installment Contract, and the Note together with all its right, title, and interest in and to the consumer goods and other property described in the contract." (Emphasis added.)

Gulf Republic Service Corporation was at the relevant time a wholly owned subsidiary of Home Savings Association of Houston, Texas.

■■■■■ Admissions in trial pleadings are regarded as judicial admissions in that case, require no proof of the admitted fact and authorize the introduction of no evidence to the contrary. *J.A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728 (Tex. Civ.App.—Amarillo 1967, writ ref'd n.r.e.); *Whitt v. Bussey,* 387 S.W.2d 926 (Tex.Civ. App.—Austin 1965, writ ref'd n.r.e.). It is not necessary for either party to prove facts which are distinctly alleged by the adverse party. *Taylor v. Catalon,* 140 Tex. 38, 166 S.W.2d 102 (1942); *O'Hara v. Hexter,* 584 S.W.2d 310 (Tex.Civ.App.—Dallas 1979, no writ); *Red Top Taxi Co. v. Snow,* 452 S.W.2d 772 (Tex.Civ.App.—Corpus Christi 1970, no writ). Therefore, a violation of the Home Solicitation Sales Act was admitted on the face of appellee's petition.[5] At no time did appellees move to amend.[6] We find, therefore, that there was a violation of the Home Solicitation Sales Act in that the note was assigned to a third party on the same day that it was executed. The contract is void and unenforceable. TEX.REV.CIV.STAT.ANN. art. 5069–13.03(b) (Vernon Supp.1984). Under the Home Solicitation Sales Act, it is not necessary to find that Roberto Gonzales was an agent or employee of Aluminum Industries, Inc. in order to find that the contract is void and unenforceable by any assignee. Appellants' fifth point of error is sustained.

Appellants, by their first, second and third points of error, complain of the amount of the judgment against them.

■■■■ We hold that the trial court erred in finding that appellants were in default in the amount of $5,800, the original amount of the contract, since it is undisputed that appellants made a payment of $1,142.28.

Appellants' first point of error is sustained.

Because of our disposition of the other points of error, we need not address appellant's points of error numbers two and three.

Appellee, in its brief, raises the issue of the amount of attorney's fees to be awarded appellants. The trial court found that appellants had incurred attorney's fees in

---

5. This admission was referred to at trial on two occasions. First, on cross-examination, the defense attorney caused the vice president of Home Savings to read the two clauses out loud. Second, the admission was expressly referred to when the appellants moved for judgment on the pleadings at the end of their case.

6. Counsel for Home Savings, during closing arguments, made an oral request, "Even if the Court should find that there is a technical pleading error here, we request that in the interest of justice you overlook it." This is not a motion to amend.

the amount of $3,500. Appellees contend that attorney's fees should not be awarded because appellants did not show the hours devoted to each particular cause of action or defense. *Bray v. Curtis*, 544 S.W.2d 816 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). However, more recent cases have applied the rule that, where recovery is had on each cause of action or where the causes of action are so intertwined as to be more or less inseparable, the total amount of attorney's fees may be awarded, if the attorney's fees are authorized by the causes upon which recovery is had. *Veale v. Rose*, 657 S.W.2d 834 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.); *First Wichita National Bank v. Wood*, 632 S.W.2d 210 (Tex.App.—Fort Worth 1982, no writ); *Wilkins v. Bain*, 615 S.W.2d 314 (Tex.Civ.App.—Dallas 1981, no writ).

Appellants' defense to appellee's action was the assertion of various violations of statutes. This was also the substance of their cross-claims. In their cross-claims, appellants alleged ten causes of action: two violations of the Home Solicitation Sales Act, three violations of the Deceptive Trade Practices Act, four violations of the Texas Consumer Credit Code, and one action in common-law fraud. Recovery is granted on one violation of the Home Solicitation Sales Act and two violations of the Texas Consumer Credit Code. The Deceptive Trade Practices and fraud actions were not pursued in either the trial court or on appeal. We hold that because recovery was had on a substantial number of appellants' causes of action and because the causes of action are more or less inseparable, all requiring proof of the same facts, that the total amount of attorney's fees can be awarded.

It is, therefore, necessary to determine if attorney's fees are awarded under the relevant statutes. The Home Solicitation Sales Act provides: "Any *merchant* who violates a provision of this Act is liable to the consumer for ... attorney's fees ..." TEX.REV.CIV.STAT.ANN. art. 5069–13.03(c) (Vernon Supp.1984). "Mer-

chant" is defined as "a party to a consumer transaction other than a consumer." TEX. REV.CIV.STAT.ANN. art. 5069–13.01(4) (Vernon Supp.1984). A party to the contract is the one who has the right to bring an action to enforce the contract. *See Clear Lake City Water Authority v. Clear Lake Utilities Co.*, 549 S.W.2d 385, 390 (Tex.1977); *Triton Oil and Gas Corporation v. E.W. Moran Drilling Co.*, 509 S.W.2d 678, 686 (Tex.Civ.App.—Fort Worth 1974, writ ref'd n.r.e.).

Alternatively, as a matter of policy, we would hold appellee liable for attorney's fees under the Home Solicitation Sales Act. First, the trial court, in its findings of fact, found that forms for both the retail installment contract and the contract for labor and trust deed were provided to Aluminum Industries by Home Savings Association. Second, the contract was promptly assigned to Home Savings' wholly owned subsidiary. We find that this assignment is the very evil which the statute was intended to prevent. The Home Solicitation Sales Act "was designed to protect residential occupants from high pressure door-to-door salesmen and to allow a 'cooling off' period in which a contract thus negotiated might be rescinded." *Holmquest v. Priesmeyer*, 574 S.W.2d 173 (Tex. Civ.App.—Houston [1st Dist.] 1978, no writ); *McDaniel v. Pettigrew*, 536 S.W.2d 611 (Tex.Civ.App.—Dallas 1976, writ ref'd n.r.e.). Assignees of home solicitation contracts must be held responsible for the acts of their assignors; otherwise, we are faced with the prospect of unscrupulous salesmen pressuring consumers into contracts, assigning the benefit of the contract for cash, and disappearing. The assignee would be able to collect without risk, when the assignor could not do so. Both as a matter of statutory interpretation and a matter of policy, we find that appellee is responsible for reasonable attorney's fees under the Home Solicitation Sales Act.

As noted above, we also find that appellee is responsible for reasonable attorney's fees under the Consumer Credit

Code, TEX.REV.CIV.STAT.ANN. art. 5069–8.01(a) and (b) (Vernon Supp.1984).

Appellee raises by cross-point that the trial court erred in not finding that appellee was a member of a Federal Home Loan Bank and, as such, that it may avail itself of the protections given by 15 U.S.C.A. § 57a(f)(3). Appellee did not point out what these protections might be, and upon examination of the cited statutory provision, we cannot ascertain what they are.

Appellee's cross-point is overruled.

We REVERSE the judgment of the trial court and RENDER judgment that appellee take nothing and that the contract, the subject of this suit, is null and void and that appellants recover against appellee, Home Savings, in the amount of $4,000 plus attorney's fees of $3,500 as found by the trial court. Costs are adjudged against appellee.