**In re Imelda MORGAN, Debtor.**

**Imelda MORGAN, Plaintiff,**

**v.**

**SOUTH TEXAS HOME SERVICES, INC. and First Texas Savings Assoc., Defendants.**

**Bankruptcy No. 83–02155–C2–3. Adv. No. 85–0007–C2.**

United States Bankruptcy Court, S.D. Texas, Corpus Christi Division.

July 8, 1987.

Jack O'Boyle, Jordan, Dunlap & Prather, Dallas, Tex., for First Texas Sav. Assoc.

Thomas M. Schumacher, Corpus Christi, Tex., for Imelda Morgan.

Sam H. Burris, Alice, Tex., for South Texas Home Services, Inc.

## MEMORANDUM OPINION

R.F. WHELESS, Jr., Chief Judge.

### FACTS

Imelda Morgan ("Morgan"), Plaintiff and Debtor herein, executed a contract with South Texas Home Services, Inc. ("South Texas"), on June 18, 1982. The contract, designated "Retail Installment Contract" was for the purchase and installation of aluminum insulation, screening, siding, and shingles on her already-constructed home. South Texas, in order to secure its claim, placed a first lien on Morgan's home and lot, located in Alice, Jim Wells County, Texas. The lien was in the form of a "Mechanic's and Materialmen's Lien Contract with Power of Sale", executed on June 18, 1982, and recorded in Jim Wells County, Texas. Almost immediately, South Texas assigned both the Retail Installment Contract and the Mechanic's and Materialmen's Lien Contract with Power of Sale to First Texas ("First Texas"). This assignment resulted in First Texas holding a perfected first lien on Morgan's principal residence.

Plaintiff, in Chapter 13, filed an adversary proceeding against South Texas, and First Texas on January 9, 1985 in the 79th District Court of Jim Wells County, Texas. Morgan's allegations were as follows: (1) both Defendants violated Chapter Six of the Texas Consumer Credit Code, *Tex.Rev. Civ.Stat.Ann.* art. 5069-6.01, *et seq.* (hereinafter the Texas Consumer Credit Code) by charging in excess of the amount al-

lowed in art. 5069–6.02(9) for the time-price differential; (2) both Defendants violated the Texas Consumer Credit Code, art. 5069–6.05(7)(b), because a first lien was taken on her homestead; and (3) the Depository, Institutions, Deregulations and Monetary Control Act of 1980, 12 U.S.C. § 1735f–7 and the regulations promulgated thereunder, 12 C.F.R. § 590.1 do not preempt the Texas Consumer Credit Code.

First Texas, in defense, denied each of these itemized allegations.

Plaintiff's first complaint as to an excessive interest rate charge in the Retail Installment Contract is no longer in dispute as the parties have stipulated that the interest rate was "at or below the annual percentage rate permitted under the National Housing Act and at or below the annual percentage rate in Art. 1.04 of the Texas Consumer Credit Code." (Joint Stipulations in the Adversary Proceeding, p. 2). The remaining issues are: (1) whether South Texas has an obligation to repurchase the Retail Installment Contract from First Texas; (2) whether the Texas Consumer Credit Code, art. 5069–6.05(7)(b), was violated by the taking of a first lien on Morgan's homestead; and (3) whether the Texas Consumer Credit Code is preempted by the Depository, Institutions, Deregulation and Monetary Control Act of 1980, 12 U.S.C. Section 1735f–7 with the regulations promulgated under it, 12 C.F.R. Section 590.1.

## I. THE REPURCHASE AGREEMENT

■ South Texas alleges that it has no duty to repurchase the Retail Installment Contract from First Texas. The specific terms of the contract, however, require South Texas to repurchase the contract if an "objection or claim" is made on the contract. The language of the "Assignment" portion of the contract reads as follows: "Creditor agrees to repurchase the contract from First Texas, on demand, by paying to First Texas the unpaid balance due on the contract to First Texas, plus any and all costs and expenses incurred by First Texas with respect thereto, including attorney's fees and other expenses of liti-

gation, if (i) any representation and warranty made above shall be false, or (ii) customer raises any complaint or objection regarding the collateral or the contract, or any claim or defense relating to the contract after notice of the assignment of the contract is mailed to customer." (Retail Installment Contract p. 4)

The contract is very clear about the duties of South Texas. Morgan was duly notified of the assignment of the contract to First Texas, therefore, because of the "objection or claim" on the contract South Texas is obligated to repurchase the contract.

## II. THE FIRST LIEN

■ The first question which must be addressed on the lien issue is whether the Texas Consumer Credit Code, art. 5069–6.05(7)(b) applies to home improvements, as well as to the sale and construction or the sale of new homes. The portion of the statute in question reads as follows:

"No retail installment contract or retail charge agreement shall:

(7) Provide for or grant a first lien upon real estate to secure such obligation, except, (a) such lien as is created by law upon the recording of an abstract of judgment or (b) such lien as is provided for or granted by a contract or series of contracts for the sale or construction and sale of a structure to be used as a residence so long as the time price differential does not exceed an annual percentage rate permitted under either this Chapter or Article 1.04 of this Title.

In oral argument, Morgan contended that the exception to the prohibition of a first lien does not apply here as there was no sale and construction or sale of her home. First Texas argued in response that a careful reading of arts. 5069–6.01 and 5069–6.05(7)(b) of the Credit Code together, points to the word "structure" as the critical connection between the two sections. The applicable portion of the Texas Consumer Credit Code, art. 5069–6.01 reads as follows:

(a) "Goods" means all tangible personal property when purchased primarily for

personal, family or household use and not for commercial or business use, including such property which is furnished or used at the time of sale or subsequently, in the modernization, rehabilitation, repair, alteration, improvement or construction of real property so as to become a part thereof whether or not severable therefrom. The term also includes, but is not limited to a structure,...."

Article 5069–6.05(7)(b) of the Texas Consumer Credit Code speaks of the "... sale or construction and sale of a structure ..." as the qualifying terms which allow the taking of a first lien on residential property based on a retail installment contract. First Texas contended that the Legislature's drafting of art. 5069–6.01 deliberately provided for the inclusion of "structure" in the definition of "goods". "Goods" also includes "... property which is used in the modernization, rehabilitation, repair, alteration, improvement or construction of real property." The defendant concluded that this evidenced the intent of the Legislature to include home improvements to existing residences as an exception to the prohibition against the taking of a first lien on a homestead by a retail installment contract.

Texas case law has interpreted art. 5069–6.05(7)(b) of the Texas Consumer Credit Code on several occasions. The earliest case on point is *Anguiano v. Jim Walter Homes, Inc.*, 561 S.W.2d 249, 253 (Tex.Civ. App.—San Antonio 1978, writ ref'd n.r.e.). In *Anguiano*, a landowner entered into a contract with a contractor to have a new home built on his unencumbered property. The landowner later sued the contractor for statutory penalties under the Texas Consumer Credit Code. The Court, in interpreting the Texas Consumer Credit Code, stated that the Code "... is plain, clear, and unambiguous, and hence, the aid of rules of construction is not helpful or required, and in fact, their use under such circumstances would be improper."

This holding coupled with a recent case from the Texas Supreme Court, *Garcia v. Gainan's Chevrolet City, Inc. and General Motors Acceptance Corporation*, 690 S.W.2d 892 (Tex.1985) make it evident that the Texas Consumer Credit Code is to be interpreted literally, and/or in favor of the consumer. *Garcia* involved the purchase of a car through a retail installment contract. The Texas Supreme Court, in interpreting the Texas Consumer Credit Code, reaffirmed their holding in *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324, 332 (Tex.1984) wherein it was stated that: "... we are obligated to construe the Credit Code in a manner that comports with Legislative intent and further the purposes of the statute."

The Legislative intent behind the Texas Consumer Credit Code was recognized by the Texas Supreme Court in *Southwestern Inv. Co. v. Mannix*, 557 S.W.2d 755, 764 (Tex.1977) where the Court said that "... [t]he Legislative pronouncements concerning the form and contents of the retail installment contract must be construed as imposing duties on the seller, since it is the conduct of the seller which the Legislature sought to regulate." Therefore, because the duties are placed on the seller, the Texas Consumer Credit Code is to be read in favor of the debtor.

*De la Fuente v. Home Savings Association*, 669 S.W.2d 137, 141 (Tex.App.—Corpus Christi 1984, no writ) held that the taking of a first lien on a homestead violated the Texas Consumer Credit Code, art. 5069–6.05(7)(b). In *De la Fuente*, the homeowners claimed interest rate violations in a home improvement loan. The consumers executed a contract and promissory note to secure the purchase of materials and installation of aluminum siding on their home. The contract gave Home Savings a first lien on the homestead. In its decision, the Appellate Court stated: "[T]he Retail Installment Contract signed by the De la Fuentes is in violation of the Texas Consumer Credit Code, Art. 5069–6.-05 in that the contract provided for a first lien on the De la Fuente's home."

In *De la Fuente* the interest rate was excessive under the law. *Here, it was not.*

■ However, in light of the previously discussed cases, it is clear that art. 5069–6.-05(7)(b) was violated by the taking of a

first lien on Morgan's home. There appears to be no alternative but for this Court to rule for Morgan. If the Legislature's intent was to allow the taking of a first lien on residential homesteads as long as the interest rate was within certain boundaries, the statute could have been worded differently. In addition, as an alternative the Legislature could have used the word "goods" in place of the word "structure" in art. 5069–6.05(7)(b). Had they done so, a first lien on a residence for improvements to the residence would have been valid under the statute if the interest rate were proper (it was). The reason is that the term "goods" is defined to include "rehabilitation, repair, alteration and improvement". It also expressly includes the word "structure" but it nevertheless cannot be said that every structure is synonymous with goods so that *each* includes the other. If this were true, South Texas and First Texas would prevail. This Court reluctantly concludes that the term "structure" in art. 5069–6.05(7)(b) of the Texas Consumer Code does not include the defined term "goods" within its meaning so that a retail installment contract or retail charge agreement for home improvements would support a *first* lien on the structure (home).

It seems to this Court that the terms of art. 5069–6.05(7)(b) are unfortunately worded but the statute seems clear and unambiguous and leaves no room for construction and must be applied literally.

### III. TEXAS LAW VERSUS FEDERAL PREEMPTION

The Court does not reach this issue, as the parties stipulated that there was no interest rate problem.

### IV. CONCLUSION

In accordance with the foregoing, the Court finds that South Texas is required to repurchase the contract from First Texas. The Court also finds that the Texas Consumer Credit Code, art. 5069–6.05(7)(b) does not allow the taking of a first lien on a homestead for home improvements.

Therefore, the Court finds for the Plaintiff, Imelda Morgan.

The attorney for Morgan is to submit an order consistent with this opinion within 10 days.