**In re Lucille REBECTOR, Debtor.**

**PRUDENTIAL DEVELOPMENT CO.
PENSION PLAN TRUST,**
Appellant,

v.

**Lucille REBECTOR, Appellee.**

Civil Action No. SA–96–CA–229.

United States District Court,
W.D. Texas,
San Antonio Division.

May 22, 1997.

James Patrick Brady, Victor N. Makris, Office of Victor N. Makris, Houston, TX, for Appellant.

Jose C. Rodriguez, Rodriguez, Cleveland, Cannon & Butt, San Antonio, TX, for Appellee.

## OPINION AND ORDER CONCERNING APPEAL OF SUMMARY JUDGMENT ISSUED BY BANKRUPTCY COURT

BIERY, District Judge.

Appellant/defendant Prudential Development Co. Pension Plan Trust (Prudential) appeals from an order of the bankruptcy court signed December 14, 1995. The bankruptcy court granted summary judgment for appellee/plaintiff Lucille Rebector, found the lien executed by the Rebector invalid and void, and assessed a $4,000 penalty against Prudential for violation of the Texas Consumer Credit Code and $5,000 as attorney's fees.[1] For the following reasons, this Court finds the judgment should be reversed and remanded for fact finding proceedings.

## I. BACKGROUND

In September of 1993, Lucille Rebector entered into a contract with Ramon Korrodi d/b/a Unicorn Construction to have improvements made to her home. Ms. Rebector signed a Builder's and Mechanic's Lien Promissory Note in the amount of $16,280 and a Builder's and Mechanic's Lien Contract and Deed of Trust. Both of these

documents were dated September 16, 1993. In 1994, Ms. Rebector filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Prudential filed a proof of claim as a secured creditor; Ms. Rebector countered by filing an adversary proceeding objecting to the claim.

Ms. Rebector filed a motion for summary judgment claiming: (1) the transaction in question was a retail installment contract; (2) Prudential's assertion of a first lien on her homestead property was in violation of article 5069–6.05 of the Texas Revised Civil Statutes; and (3) Prudential was charging an excessive time-price differential. Defendant Prudential filed a response to the motion claiming the transaction was an "interest transaction" and not a retail installment contract and therefore the claim concerning excessive time-price differential and the first lien were not valid. Prudential also maintained Ms. Rebector had waived her claims or was estopped from now making these assertions.

Prudential presents three issues for this Court's review:

(1) Whether the Bankruptcy Court erred in granting summary judgment due to the existence of genuine issues of material fact.

(2) Whether the Bankruptcy Court erred in finding that the contract in question is a retail installment contract.

(3) Whether the Bankruptcy Court erred in granting judgment of statutory penalties and attorney's fees.

## II. STANDARD OF REVIEW

■ The standard of review in bankruptcy cases is no different from the standard of review in other civil cases. *Stone v. Caplan (In re Stone)*, 10 F.3d 285, 288 (5th Cir.1994). On appeal of a bankruptcy proceeding, the district court applies a two level standard of review. *Bradley v. Pacific Southwest Bank,*

---

1. The practical effect of the judgment is that Ms. Rebector has the benefit of $16,280 in home improvements without paying for the same in addition to a positive recovery of $9,000 in penalty and attorney's fees against Prudential.

*FSB (In re Bradley)*, 960 F.2d 502, 507 (5th Cir.1992). The first level of review involves reviewing the bankruptcy court's findings of fact. The factual findings of the bankruptcy court are reviewed under the clearly erroneous standard. *In re Bradley*, 960 F.2d at 507; *Truman v. Deason (In re Niland)*, 825 F.2d 801, 806 (5th Cir.1987). The second level of review involves reviewing the bankruptcy court's conclusions of law. Unlike factual findings, however, the court will review the legal conclusions of the bankruptcy court under the less deferential de novo standard. *In re Bradley*, 960 F.2d at 507; *Wilson v. Huffman (In re Missionary Baptist Found. of America, Inc.)*, 712 F.2d 206, 209 (5th Cir.1983). Under the de novo standard, this Court, is required "to make a judgment independent of the bankruptcy court's without deference to that court's analysis and conclusions." *Lawler v. Guild, Hagen & Clark, Ltd. (In re Lawler)*, 106 B.R. 943, 952 (N.D.Tex.1989). Consequently, when a bankruptcy court premises a finding of fact upon an improper legal standard, that finding loses the insulation of the clearly erroneous rule. *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir.1991); *In re Missionary Baptist*, 712 F.2d at 209.

■ The de novo standard of review is also applied when a district court reviews a bankruptcy court's order granting a motion for summary judgment. *Jones v. NCNB Texas, N.A. (In re Jones)*, 143 B.R. 687, 689 (S.D.Tex.1991). In making that review, "the rules governing the granting of a summary judgment remain the same." *Id.* All questions of fact are "viewed in the light most favorable to the non-movant. Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Southmark Corp. v. Schulte Roth & Zabel (In re South-*

*mark)*, 88 F.3d 311, 314 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 686, 136 L.Ed.2d 611 (1997).

## III. POINTS OF ERROR

■ In its first point of error, Prudential contends the bankruptcy court erred in granting summary judgment because of the existence of genuine issues of material fact such as: (1) whether Ms. Rebector knew the transaction was going to be financed by a third party lender, i.e. a loan; (2) whether Ms. Rebector knew at the time she entered into the transaction that there would be a third party loan; (3) whether Ms. Rebector knew prior to the assignment of the note and deed of trust that third party financing was involved; (4) whether Ms. Rebector was actually offered a "cash price" and a "credit price"; and (5) whether under the circumstances the parties intended the financing of the improvements to be provided via a retail installment contract charging a time-price differential or a loan arrangement charging interest. In its second point of error, Prudential contends the bankruptcy court erred in finding the contract in question a retail installment contract. Because these two issues intertwine, they will be reviewed together.

In its opinion, the bankruptcy court found, as a matter of law, the transaction in issue to be a retail installment transaction under the Consumer Credit Code because it found the retailer seller financed the home improvement transaction. This finding seems to be based upon the fact the contractor who was to provide the services was also the payee on the Builder's and Mechanic's Lien note.[2] The bankruptcy court also found it immaterial that the note was subsequently assigned citing *Morgan v. South Texas Home Serv., Inc.,* 75 B.R. 630 (Bankr.S.D.Tex.1987).[3] The bankruptcy court concluded "[a] third

---

2. The Court notes that it is standard practice in the industry for the contractor to be the payee on the Builder's and Mechanic's Lien Note.

3. In *Morgan v. South Texas Home Serv., Inc.,* 75 B.R. 630 (Bankr.S.D.Tex.1987), the contract was designated a "Retail Installment Contract" and

the parties also executed a "Mechanic's and Materialmen's Lien Contract" to secure a first lien on the home. The contractor assigned the Retail Installment contract and the Mechanic's and Materialmen's Lien Contract almost immediately. The issue was not whether the contract was a retail installment contract but whether the con-

party loan transaction did not arise because a third party did not lend money to the buyer." *Rebector v. Note Serv. Corp.,* 192 B.R. 411, 414 (Bankr.W.D.Tex.1995). In reviewing the record and briefs presented, this Court finds a genuine issue of material fact exists as to whether or not the transaction in issue is a retail installment agreement or an interest bearing third party loan.

As stated by the bankruptcy court:

A "retail installment transaction" is limited to a transaction which is evidenced by a "retail installment contract" which provides for "a time price differential" as that term is defined in the statute. It has been held that time price differential means the higher of two prices which a consumer knowingly pays for the privilege of paying for a purchase of goods or services over a period of time as opposed to immediately paying the full, but lesser cash price. In order for a transaction to be a "retail installment transaction," there must be a "cash price" and a "credit price" offered to the buyer by the seller.

*Id.* at 413. The cash and credit price must be offered to the buyer at the time of the contract, and the finance charge must "be set forth in the contract before a finance charge will be deemed a time-price differential." *Rotello v. International Harvester Co.,* 624 S.W.2d 249, 251 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). In addition, in order for a contract to be deemed a retail installment con-

tract, various requirements and disclosures must be contained therein such as: (1) the cash sales price of the goods or services; (2) the amount of the down payment; (3) the difference between items 1 and 2 above; (4) provisions applicable to insurance coverage and official fees; (5) the principal balance; (6) the amount of the time-price differential; and (7) the amount of the balance owed by the buyer, which is the sum of items 5 and 6 above. *San Juan Pools, Inc. v. Krohn,* 594 S.W.2d 492, 494 (Tex.Civ.App.—San Antonio 1979, no writ).

Here, Ms. Rebector and the contractor executed a proposal and contract on August 30, 1993, and a Builder's and Mechanic's Lien Promissory Note and a Builder's and Mechanic's Lien Contract and Deed of Trust on September 16, 1993. Both the Builder's and Mechanic's Lien Note and Contract/Deed of Trust appear to be standard real estate forms. All three documents indicate the amount owed to the contractor as $16,280 but none of these signed documents disclose a credit price.[4] The only mention of a time-price differential is contained in a box located on an unsigned Truth-in Lending Consumer Credit Act Disclosure Statement which Ms. Rebector states she received "at the time of the signing of the contract."[5] Ms. Rebector also states had she "understood that the contract called for [her] to pay so much money over and above the amount [she] was quoted on August 30, 1993 of $16,280.00, [she] would never had [sic] signed the original agreement." This statement together

---

tractor was required to repurchase the contract from the assignee and whether the Consumer Credit Code allowed the taking of a first lien on a homestead for home improvements. *Id.* at 634.

**4.** This situation is unlike that in *Jim Walter Homes v. Schuenemann,* 668 S.W.2d 324, 327 (Tex.1984), where the building contract showed that the debtors (the Schuenemanns) were given the option to purchase their house for a cash price or a time price. The contract also indicated that the parties elected to purchase the house on a time price basis. *Id.*

**5.** In the Affidavit of Fact by Lucille Rebector, Ms. Rebector indicates that the Builder's and Mechanic's Lien Promissory Note, the Builder's and Mechanic's Lien Contract and Deed of Trust and

the Proposal and Contract are true and correct copies of the instruments signed to record the transaction. Ms. Rebector refers to the Truth–In Lending and Consumer Credit Acts Disclosure Statement as a true and correct copy of the papers she received at the time of the signing of the contract. Ms. Rebector does not indicate who gave her the disclosure statement. From the Affidavit of Harry Kaufhold, Jr., it appears a third party lender provided the disclosure statement to Ms. Rebector. *See Affidavit of Harry Kaufhold, Jr.,* Exhibit E of Defendant's Response to Plaintiff's Motion for Summary Judgment ("the boxed language refering [sic] to 'time price differential' ... is a general notice we give to debtors being a usury savings clause.... The boxed language is a general notice and is not part of the underlying agreements.").

with the documents actually signed by the parties raises a fact issue as to whether Ms. Rebector was ever offered a cash price and a credit price and thereby ever entered into a retail installment agreement. In addition, Harry Kaufhold, Jr., an individual affiliated with Prudential, states in his affidavit that the "[t]he boxed language referring to 'time price differential' at the bottom of Exhibit G to Plaintiff's Motion for Summary Judgment [the unsigned Truth-in Lending Consumer Credit Act Disclosure Statement which Ms. Rebector states she received at the time she signed the contract] is a general notice we give to debtors being a usury savings clause meaning that we would not charge over that allowed by law. The boxed language is a general notice and is not part of the underlying agreements."[6] Mr. Kaufhold also stated that when he spoke with Ms. Rebector, she did not "seem confused about the transaction and did not exhibit any hesitancy in accepting its terms."

In addition, a question of material fact is raised by Prudential as to whether Ms. Rebector knew the transaction was to be funded by a third party lender in its presentation of Ms. Rebector's loan application and the affidavits of two individuals who spoke with Ms. Rebector about the transaction. The application provided by Prudential indicates that Ms. Rebector and Billie Jean Mamora applied for a property improvement loan on August 28, 1993, in the amount of $16,280, which coincidentally is the same amount of the Builder's and Mechanic's Lien Note and Contract. Both affiants state they received a Credit Application on a Title I form for a home improvement loan. Solid M Develop-ment, for whom one of the affiants worked and to whom Ms. Rebector and the contractor instructed the Bexar County Clerk to return the recorded Builders' and Mechanic's Lien Contract and Deed of Trust, also received the signed request for employment verification from Ms. Rebector's co-applicant. Both affiants state they spoke with Ms. Rebector concerning a problem with the tub, and Mr. Martino with Solid M Development avers that the basis for his call was to "make sure that the homeowner was fully satisfied in all ways prior to any funding on our part. In speaking with Ms. Rebector she was aware that her job was going to be funded by third party financing and that she understood the transaction. On the basis of the representations she made to me we went forward with funding the transaction." *See Affidavit of Russell J. Martino,* Exhibit F to Defendant's Response to Plaintiff's Motion for Summary Judgment.

## IV. CONCLUSION

Based on the foregoing and the record, this Court cannot ascertain as a matter of law what Ms. Rebector understood about the transaction at the time she signed the contract, whether both a credit and a cash price were offered to her, or if the parties understood and agreed to third party financing. *See Briercroft v. De Los Santos,* 776 S.W.2d 198, 211 (Tex.App.—San Antonio 1988, writ denied) (contractor and plaintiffs understood from very beginning and at all times pertinent that transaction was to be financed by the extension of credit in the form of a loan; no provision in any documents indicating intent to enter into retail

---

**6.** In *Briercroft v. De Los Santos,* 776 S.W.2d 198, 201 (Tex.App.—San Antonio 1988, writ denied), the plaintiffs and the contractor signed a Truth in Lending Disclosures. In that form, the following information was given: (1) annual percentage rate ("the cost of your credit as a yearly rate:"); (2) finance charge ("the dollar amount the credit will cost you"); (3) amount financed ("the amount of credit provided to you or on your behalf"); (4) total of payments ("the amount you will have paid after you have made all payments as scheduled"); and (5) total sales price ("the total cost of your purchase on credit, including your down payment of $0"). The plaintiffs also signed a Credit Application under the provisions of Title I of the National Housing Act. *Id.* at 211. The court noted that federal regulations required the Truth in Lending disclosures and that the total payment disclosure was not the "Time Price" but the total cost of credit required to be disclosed. The court concluded that the transaction was a " 'property improvement loan' under title I of the National Housing Act, and not a 'retail installment transaction.' " In the instant case, there is evidence of Ms. Rebector signing a Title I credit application, and the unsigned Truth–in–Lending appears to be similar to that provided in *Briercroft.*

installment transaction.). Therefore, this Court finds that genuine issues of material fact exist. The summary judgment entered by the bankruptcy court is REVERSED and the case remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.