Esmeralda O. GUTIERREZ, Appellant,

v.

GULF COAST BUILDERS & SUPPLY COMPANY, et al., Appellees.

No. 13–86–535–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 28, 1987.

Rehearing Denied Oct. 8, 1987.

Thomas M. Schumacher, Corpus Christi, for appellant.

David V. Herin, Herin & Johnson, Arnold G. Gonzalez, Wood, Boykin, Wolter & Keys, Corpus Christi, for appellees.

Before NYE, C.J., and UTTER, and SEERDEN, JJ.

## OPINION

UTTER, Justice.

Esmeralda Gutierrez sued Gulf Coast and First Texas over the purchase of aluminum siding for her home, claiming violations of the Consumer Credit Code, Tex. Rev.Civ.Stat.Ann. art. 5069–6.05(7) (Vernon 1986). Trial was to the court, which entered a take-nothing judgment. We affirm the judgment of the trial court.

Gutierrez and her ex-husband hired Gulf Coast to install aluminum siding on their home. Gutierrez testified that she signed a "credit application for property improvement loan." It is undisputed that the document expressly provided that "This application is submitted to obtain credit under the provisions of Title I of the National Housing Act." Gutierrez and Gulf Coast subsequently entered into a contract entitled "Retail Installment Contract," sub-headed "National Housing Act Loan Under FHA Title I." The agreement provided that payments would be made to Gulf Coast at the offices of First Texas. This contract was assigned to First Texas.

Apparently, Gutierrez gave a first lien on her home as security.[1] She now claims that taking a first lien on her home violated article 5069–6.05(7), which provides that no retail installment contract shall provide for or grant a first lien upon real estate to secure an obligation. Gulf Coast and First

Texas contend that the transaction is not controlled by article 5069–6.05, but is governed by 24 C.F.R. § 201.24 (1987).

Gutierrez asserts five points of error to obtain a reversal of her case. However, we have determined that the outcome of all five points of error turns upon whether the transaction was a "property improvement loan" under Title I of the National Housing Act[2] and, if so, whether the Act allows the taking of a first lien on real estate in spite of the prohibition contained in article 5069–6.05(7). We hold that the Act preempts article 5069–6.05 where a first lien upon real estate is concerned.

The evidence establishes that the transaction was a "Dealer loan" as contemplated by the Act:

"Dealer loan" means a loan where a dealer, having a direct or indirect financial interest in the transaction between the borrower and the lender, assists the borrower in preparing the credit application or otherwise assists the borrower in obtaining the loan from the lender. The lender may disburse the loan proceeds solely to the dealer or the borrower, or jointly to the borrower and the dealer or other parties to the transaction.

24 C.F.R. § 201.2(f) (1987).

This is precisely the role that Gulf Coast played. Gulf Coast assisted Gutierrez in filling out the "credit application for property improvement loan" and submitted it to First Texas. The contract clearly states that it is a "National Housing Act Loan Under F.H.A. Title I." Likewise, it is clear that the "credit application for property improvement loan" was "submitted to obtain credit under the provisions of Title I of the National Housing Act." The only evidence to the contrary is the title of the contract, "Retail Installment Contract," and a provision contained therein which provided that "Customer [Gutierrez] shall have all rights granted by, and Creditor shall be limited by all prohibitions of, Chapter 6 of the Texas Credit Code and any other applicable law...."

---

1. Gutierrez testified that she and her husband owned their home outright; it was "paid for."

2. The Act is a federally insured loan program. 24 C.F.R. § 201.1–.55 (1987).

Viewing the documents in their entirety (to the extent possible due to the record before us) we conclude that the trial court did not err in determining that the transaction was a "property improvement loan made under the provisions of Title I of the National Housing Act." Nor do we view the provision referable to Chapter 6 quoted above as determinative. The contract's further reference to "any other applicable law" certainly encompasses 24 C.F.R. § 201.1–.55 (1987).

■ The next question is whether 24 C.F.R. § 201.24 preempts article 5069-6.-05(7) as to taking a first lien on real estate. Section 201.24 provides:

(a) Property improvement loans. (1) Any property improvement loan (other than a manufactured home improvement loan) in excess of $2,500 shall be secured by a recorded lien on the improved property. The lien shall be evidenced by a mortgage or deed of trust, executed by the borrower and all other owners in fee simple.

"Pre-emption may be either expressed or implied, and 'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Fidelity Federal Savings and Loan Association v. de la Cuesta,* 458 U.S. 141, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)).

Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." *Rice v. Santa Fe Eleva-*

*tor Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947).

Even where Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility." *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *See also Jones v. Rath Packing Co.,* 430 U.S., at 526, 97 S.Ct., at 1310; *Bethlehem Steel Co. v. New York Labor Relations Bd.,* 330 U.S. 767, 773, 67 S.Ct. 1026, 1029, 91 L.Ed. 1234 (1947). These principles are not inapplicable here simply because real property law is a matter of special concern to the States: "The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail." *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962); *see also Ridgway v. Ridgway,* 454 U.S. 46, 54–55, 102 S.Ct. 49, 55, 70 L.Ed.2d 39 (1981). *Fidelity Federal,* 102 S.Ct. at 3022.

Federal regulations have the same preemptive effect as federal statutes. *Id.* Federal law, not state law, governs questions involving the rights of the United States under nationwide federal programs. *United States v. Med O Farm, Inc.,* 701 F.2d 88, 90 (9th Cir.1983). The loan in this case was made under the National Housing Act, a federal program. A state law may be adopted to govern the parties under a federal program, but any such rules must be rejected where their application would thwart the program's objectives. *Id.* The primary purpose of the National Housing Act is to "promote the construction and rehabilitation of private housing." *Citizens National Trust and Savings Bank v. United States,* 270 F.2d 128, 133 (9th Cir.

1959).  In order to encourage these loans, Congress authorized the insurance provisions of the Act.  *Id.*

Applying the lien prohibition of article 5069–6.05(7) to federally insured loans under the National Housing Act would surely thwart the objectives of the program. Therefore, we hold that it was the intent of the United States Congress in enacting 24 C.F.R. § 201.24 to preempt state laws to the contrary.  The trial court did not err in holding that Gulf Coast and First Texas "did not violate any provisions of the Texas Consumer Credit Code."  The judgment of the trial court is affirmed.