**BRIERCROFT SERVICE CORPORATION, et al.,
Appellants,**

v.

**Rodolfo DE LOS SANTOS, et
ux., Appellees.**

No. 04–87–00194–CV.

Court of Appeals of Texas,
San Antonio.

May 31, 1988.

Rehearing Denied Aug. 23, 1989.

Charles B. Frye, Robert W. St. Clair, Curry, Curry & Robinson, Lubbock, for appellants.

Charles Manning, Beeville, for appellees.

Before CANTU, REEVES and BISSETT,* JJ.

## OPINION ON MOTION FOR REHEARING

BISSETT, Justice (Assigned).

The opinion of this Court in this case, which was delivered and filed on March 23, 1988, is withdrawn and this opinion is substituted therefor. The judgment of this Court, which was also filed on March 23, 1988, is also withdrawn, and a new judgment is substituted therefor.

Both plaintiffs and defendants have filed motions for rehearing. The motion of plaintiffs is denied and the motion for defendants is granted.

Involved in this appeal are alleged violations of the Federal Trade Commission Rule, 16 C.F.R. § 433.2 (1976), TEX.BUS. & COM.CODE ANN. § 17.41, *et seq.*, (Vernon 1987), and TEX.REV.CIV.STAT.ANN. art. 5069–1.01 et seq. (Vernon 1987).

## IN GENERAL

Plaintiffs Rodolfo De Los Santos and his wife, Lydia De Los Santos, filed suit on

June 5, 1984, against Steve Barrera, d/b/a Alamo Builders and Supply, Briercroft Service Corporation and Briercroft Savings Association to recover damages as a result of an alleged breach of a home solicitation transaction. On appeal, the principal issue is whether the assignees of a home improvement contract can be held jointly and severally liable for the contractors' misconduct in failing to construct the improvements in a good and workmanlike manner. Plaintiffs predicate their right to a recovery of damages against Briercroft Service Corporation and Briercroft Savings Association strictly on the undisputed facts that both were assignees of the home improvement contract and Briercroft Savings Association was the holder of the note executed by plaintiffs in payment for the contracted home improvements.

In late September or early October 1983, an agent of Alamo Builders and Supply, hereafter "Alamo," visited plaintiffs in their home in Kennedy, Texas, and discussed with them the possible construction of home improvements to plaintiffs' residence (their homestead). Plaintiffs' Exhibit 4 purports to be a "Retail Installment Contract," which described the proposed home improvements to be made. It was not signed by Alamo or by plaintiff Rodolfo De Los Santos, although it was signed by plaintiff Lydia De Los Santos. Since it was not signed by all parties, we do not notice it further. Thereafter, a document entitled "Contract for Labor and Materials and Trust Deed," Plaintiffs' Exhibit 2, was entered into by and between plaintiffs and Alamo. It was dated October 3, 1983, and provided for the construction of certain improvements to plaintiffs' home, and was signed by plaintiffs, as "Owners," and by Alamo, as "Contractor." The contract provided that plaintiffs would pay the contractor $13,000.00 for the construction of the improvements, and that the $13,000.00 would be evidenced by a note for said

---

\* Assigned to this case by the Chief Justice of the Supreme Court of Texas as authorized by TEX.

GOV'T CODE ANN. § 74.003 (Vernon 1988).

amount, to be executed by plaintiffs upon completion of the improvements, payable to the order of the contractor in 120 equal monthly installments of $216.34, bearing interest at the rate of 15½% per annum.

Also, on October 3, 1983, plaintiffs completed and signed a "Credit Application for Property Improvement Loan," Plaintiffs' Exhibit 6, in order to obtain a loan pursuant to Title I of the National Housing Act. It recites that plaintiffs were applying to Briercroft Service Corporation for a loan of $13,000.00, to be repaid in 120 months, and that Briercroft Service Corporation "will provide the funds." The improvements to be made to plaintiffs' home were detailed therein. The application was submitted to an approved lender, Briercroft Service Corporation, a wholly owned subsidiary corporation of Briercroft Savings Association, for a determination of whether it would make the loan. The next day, October 4, 1983, Briercroft Service Corporation issued its "Advance Notice," Defendants' Exhibit B, to plaintiffs indicating it intended to loan plaintiffs $13,000.00, to be repaid in monthly installments of $216.34, with interest thereon at the rate of 15½% per annum. The Notice further stated that Briercroft Service Corporation would disburse the amount of the loan ($13,000.00) to Alamo when a "Completion Certificate" was completed by plaintiffs and received by it "indicating that the work has been satisfactorily completed." In the Notice, plaintiffs were advised that they should not sign the completion certificate until the contract had been fulfilled to their satisfaction. In connection with the aforesaid Application, plaintiffs and Alamo signed "Truth in Lending Disclosures," Plaintiffs' Exhibit 3.

In the Truth in Lending Disclosures, we note the following statements:

1. Annual Percentage Rate ("the cost of your credit as a yearly rate:)—15½%;
2. Finance Charge ("the dollar amount the credit will cost you")—$12,960.80;
3. Amount Financed ("the amount of credit provided to you or on your behalf")—$13,000.00;
4. Total of Payments ("the amount you will have paid after you have made all payments as scheduled")—$25,960.80; and
5. Total Sales Price "the total cost of your purchase on credit, including your down payment of $–0'")—$25,960.80.

The home improvements proceeded, and plaintiffs signed a Completion Certificate on October 31, 1983, Plaintiffs' Exhibit 7, wherein they stated:

I (we) certify that all articles and materials have been furnished and installed and the work satisfactorily completed on premises indicated in my (our) credit application.

Briercroft Service Corporation disbursed the $13,000.00 to Alamo upon receipt of the Completion Certificate, and funded a National Housing Act Loan under Title I.

Plaintiffs then executed a note in the principal sum of $13,000.00, payable to the order of Alamo. Apparently, the note was executed on October 31, 1983, and was endorsed by Alamo to Briercroft Service Corporation and by it to Briercroft Savings Association. The contract was assigned by Alamo to Briercroft Service Corporation on October 3, 1983, and by the latter to Briercroft Savings Association on November 1, 1983. The first installment on the note and loan became due and payable on December 31, 1983. Plaintiffs did not make any payments on the note.

Plaintiffs were not satisfied with the work performed by Alamo, and in late December, 1983, complained to Briercroft Service Corporation about the defective workmanship and the failure of Alamo, after demand made upon it, to remedy and correct the defects and flaws in the work on their home. Briercroft did nothing with respect to the complaint.

Plaintiffs, in their trial petition, alleged that Alamo had misrepresented the terms and effect of the contract, and had breached various warranties relating to the workmanship and materials used in the home improvement work. Briercroft Service Corporation and Briercroft Savings Association were joined as defendants. Plaintiffs alleged that they were entitled to damages

against all defendants for violations of the Federal Trade Commission Rule, 16 C.F.R., hereafter the "FTC Rule"; TEX.BUS. & COM.CODE ANN. § 17.41, *et seq.*, the Deceptive Trade Practice Act, hereafter the "DTPA," and TEX.REV.CIV.STAT.ANN. art. 5069–1.01 et seq., hereafter the "Consumer Credit Code." They also alleged that defendants Briercroft Service Corporation and Briercroft Savings Association were so "inextricably intertwined" with Alamo in the home improvement contract transaction so as to be jointly and severally liable for the actual damages caused by Alamo as a result of the defective work done under the contract.

Briercroft Service Corporation and Briercroft Savings Association, in addition to their original answer to plaintiffs' petition, also filed a counterclaim against plaintiffs whereby they sought to recover the balance due on the aforesaid note; it was waived at the trial. Alamo did not file an answer and did not appear at the trial.

Partial summary judgment in favor of plaintiffs against all defendants as signed on November 13, 1986, wherein it was found and decreed:

1. The transaction forming the basis of this suit was a home solicitation transaction on plaintiffs' otherwise unencumbered homestead.

2. The indebtedness evidenced by the Contract for Labor and Materials and Trust Deed was assigned less than five days after execution by plaintiffs to defendant BRIERCROFT SERVICE CORP., and was filed for record in the Kansas County Clerk's office on November 14, 1983.

3. Defendant BRIERCROFT SERVICES CORP. failed to provide notice to plaintiffs of the negotiation or sale of the evidence of indebtedness to defendant BRIERCROFT SAVINGS ASSOCIATION.

4. No notices of negotiation were provided to plaintiffs upon negotiation of the contracts involved in the transaction.

5. Plaintiffs were consumers, seeking goods and services from defendant STEVE C. BARRERA, d/b/a ALAMO BUILDERS & SUPPLY, and said defendant was conducting trade or commerce in his dealings with plaintiffs', as defined by TEX.BUS. & COM.CODE § 17.45, as amended and effective on the pertinent dates herein.

6. Defendant BRIERCROFT SERVICE CORP. is and at all pertinent times herein was a Texas corporation which provided funding to defendant STEVE C. BARRERA, d/b/a ALAMO BUILDERS & SUPPLY for the transaction with plaintiffs.

7. Defendant BRIERCROFT SAVINGS ASSOCIATION is and at all pertinent times herein was a Texas state charged savings and loan association which provided funding to defendant STEVE C. BARRERA, d/b/a ALAMO BUILDERS & SUPPLY for the transaction with plaintiffs.

8. In the transaction in question, plaintiffs were invited by defendant STEVE C. BARRERA, d/b/a ALAMO BUILDERS & SUPPLY or his agents to obligate themselves to pay $12,960.80 in interest or finance charges, and did execute documents purporting to so obligate themselves at the request of said defendant.

Trial to a jury on the remaining issues commenced on November 10, 1986. The jury found that defendants Briercroft Service Corporation and Briercroft Savings Association: made "no misrepresentations" to plaintiffs; did not act "unconscionably" toward plaintiffs; their actions were not a "producing cause" of actual damages to plaintiffs; and they were not "inextricably intertwined" with Alamo in the transactions with plaintiffs. The jury also found that: plaintiffs understood the contract; they represented to defendant Briercroft Service Corporation that they accepted the work performed by Alamo; they were satisfied with the home improvements done to their residence by Alamo; and they certified the work as completed.

The trial court sustained plaintiffs' motions for judgment and for judgment non obstante veredicto, and denied defendants' motion for judgment on the verdict. The

final judgment was signed on February 21, 1987. It, in pertinent part, recites:

[T]he Court, having considered the Motions of Plaintiffs' and said Defendants', finds that, as a matter of law, the contract documents were not a retail installment contract, the transaction was a home solicitation transaction, and the Defendants BRIERCROFT SERVICE CORPORATION and BRIERCROFT SAVINGS ASSOCIATION were not inextricably intertwined with Defendant STEVE C. BARRERA, d/b/a ALAMO BUILDERS AND SUPPLY. The Court further finds that, as a matter of law, Defendants BRIERCROFT SERVICE CORPORATION and BRIERCROFT SAVINGS ASSOCIATION, by virtue of the application of 16 C.F.R. 433.2, (the "FTC rule") are liable as assignees, jointly and severally with Defendant STEVE C. BARRERA, d/b/a ALAMO BUILDERS AND SUPPLY owes to Plaintiffs as the result of the transaction in this lawsuit....

\* \* \* \* \* \*

The Court finds that the sole ground for liability to be imposed on BRIERCROFT SAVINGS SERVICE CORPORATION (sic) and BRIERCROFT SAVINGS ASSOCIATION is the application of 16 C.F.R. 433.2 (the "FTC Rule").

All other relief requested by the parties was expressly denied by the trial court.

The order granting partial summary judgment was incorporated in the final judgment. It was ordered and decreed that plaintiffs recover from all defendants, jointly and severally, the sum of $43,500 as actual damages and attorney's fees as found by the jury. Only defendants Briercroft Service Corporation and Briercroft Savings Association have perfected an appeal from the judgment.

The appealing defendants bring forward four points of error. They contend: 1) the trial court erred in granting plaintiffs' motion for judgment and for judgment non obstante veredicto because there was no support in the facts or the law of the case to disregard the verdict of the jury; 2) the sole ground of liability found by the court

does not support the judgment; 3) there is no evidence of any wrongful acts or statutory violation being committed by any entity other than Alamo; and 4) there is no legal basis for the award of attorney's fees.

Plaintiffs, in their reply points, say: 1) even if plaintiffs are not allowed to recover from the appealing defendants more than the amount paid by plaintiffs under the contract, as provided by the FTC Rule, they may, under state law, recover the full amount of actual and discretionary damages from those defendants because they and the seller (Alamo) constituted a "person" under the DTPA with relation to the transaction complained of; 2) such defendants and Alamo were inextricably intertwined, as a matter of law, in the transaction complained of; 3) even if they are not entitled to recover from such defendants more than the amount paid by plaintiffs on the contract, they may, under state law, recover their full damages from those defendants because they failed to provide notice of negotiation of plaintiffs as required by the Consumer Credit Code; and 4) even if plaintiffs are not allowed to recover from such defendants more than the amount paid by plaintiffs on the contract, they are entitled to recover attorney's fees and court costs from those defendants under the FTC Rule.

Plaintiffs also assert three cross-points of error. They complain: 1) the trial court erred in ruling that all defendants did not constitute a "person" under the Deceptive Trade Practices Act, and in not granting their motion for judgment non obstante veredicto with regard to the jury's finding that the appealing defendants and Alamo were not "inextricably intertwined" in the transaction complained of because the evidence established those facts as a matter of law, and the question of inextricable intertwining was not properly a jury issue; 2) the trial court erred in denying them any recover under TEX.REV.CIV.STAT.ANN. arts. 5069–6.05, 5069–6.07, and 5069–8.01 because it was established by summary judgment that no notice of negotiation was provided to them by defendants, as re-

quired by Art. 5069–6.07, and the transaction involved a first lien being taken against their homestead under a retail installment contract, in violation of Art. 5069–6.05; and 3) the trial court erred in not awarding them, as actual damages under the DTPA, the amount of interest or finance charges which they became bound to pay by reason of the transaction.

■ It is the jury's province to weigh all of the evidence and to decide what credence should be given to the whole or to any part of the testimony of each witness; the jury is the exclusive judge not only of the facts proved, but of the reasonable inferences to be drawn therefrom. *Lockley v. Page*, 142 Tex. 594, 180 S.W.2d 616 (1944); *Johnson v. Buck*, 540 S.W.2d 393, 401 (Tex.Civ.App.—Corpus Christ 1976, writ ref'd n.r.e.).

■ On a motion for judgment non obstante veredicto, all evidence must be considered in the light most favorable to support the jury verdict, every reasonable intendment deducible from the evidence is to be indulged in favor of the verdict, only evidence and reasonable inferences therefrom which support the verdict may be considered, and all contrary evidence and inferences must be rejected. *Dodd v. Texas Farm Products Company*, 576 S.W.2d 812 (Tex.1979); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962); *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952).

■ Judgment non obstante veredicto is authorized only where there is no evidence which warrants the submission of special issues to the jury. *Sanders v. Harder*, 148 Tex. 593, 227 S.W.2d 206 (1950); *Carr v. Galvan*, 650 S.W.2d 864 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.).

■ Jury findings may not be disregarded if the record discloses any evidence of probative value that, with inferences which may be properly drawn therefrom, reasonably supports such findings. *Lynch v. Ricketts*, 158 Tex. 487, 314 S.W.2d 273 (1958); *Williams v. Meyer*, 629 S.W.2d 257 (Tex.App.—Waco 1982, writ ref'd n.r.e.).

## THE FEDERAL TRADE COMMISSION RULE

The FTC Rule (16 C.F.R. 433.2) provides, in pertinent part:

Preservation of consumers' claims and defenses, unfair or deceptive acts or practices.

In connection with any sale or lease of goods or services to consumers, in or affecting commerce as "commerce" is defined in the Federal Trade Commission Act, it is an unfair or deceptive act or practice within the meaning of section 5 of that Act for a seller, directly or indirectly, to:

(a) Take or receive a consumer credit contract which fails to contain the following provision in at least ten point, bold face, type;

## NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEED HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

■ The overall contract in this case was made up of four documents. They are: 1) the "Contract for Labor and Materials and Trust Deed," which was executed on October 3, 1983; 2) the "Truth in Lending Disclosures," which was executed on October 3, 1983; 3) the "Credit Application for Property Improvement Loan," which was executed on October 3, 1983, and 4) the "National Houston Act Loan Under Title I Note," which was signed by plaintiffs on October 31, 1983. Those four documents constitute the transaction in this case, and are considered together in order to ascertain the entire agreement or contract between the plaintiffs and Alamo. *Jim Walter Homes, Inc. v. Schuenemann*, 668 S.W.2d 324 (Tex.1984). The FTC Rule No-

tice appears on the face of the Truth in Lending Disclosure and the Title I Note. Moreover, a creditor's derivative liability for seller misconduct, if any, under the FTC Rule is limited to the amount paid by the consumer under the credit contract. *Home Savings Association v. Guerra,* 733 S.W.2d 134, 136 (Tex.1987). In the instant case, it is conclusively established by the evidence that plaintiffs did not pay any sum of money in cash to either Alamo or the appealing defendants for the construction of the home improvements, and that the total cost of the improvements was $13,000.00, to be evidenced by a note for said amount of money. Even if there was a violation of the FTC Rule, since plaintiffs paid nothing to anyone, they are not entitled to recover any monetary damages from the appealing defendants, the creditors in this transaction. There was no violation of the FTC Rule by Alamo, the seller in this case; therefore, there is no derivative liability on the part of Briercroft Service Corporation or Briercroft Savings Association, the lending institutions.

## THE ALLEGED VIOLATION OF THE DTPA

At the trial, Mrs. De Los Santos testified that Steve D. Barrera (the owner of Alamo), at the time of the negotiations for the construction of the home improvements, told her that he could make the improvements for the total cost of $13,000.00 and that he would give them out of that sum of money $1,300.00 in cash for them to use "on whatever we wanted for the house." Both Mr. and Mrs. De Los Santos testified that after they discovered several defects in the construction of the home improvements, and immediately before they signed the Completion Certificate, Mr. Barrera contacted them. He then paid them $2,400.00 in cash, of which $1,300.00 was in payment for the money promised them before the contract was signed; $800.00 was to be used by them to "fix the ceiling" of the home, and $300.00 was "extra money." The money was paid to plaintiffs on Octo-

ber 31, 1983, the same day that they signed the Completion Certificate. At that time plaintiffs did not want to sign the certificate but did so after Mr. Barrera told Mr. De Los Santos "not to mention anything about the money" or plaintiffs "would go to the penitentiary." The $2,400.00 was not used by plaintiffs to repair the defective work performed by Alamo, but was spent for living expenses.

It is conclusively shown by the evidence that plaintiffs were well aware of the defects in the work performed by Alamo, and that they knew that Briercroft Service Corporation would not dispurse the $13,000.00 to Alamo until they had signed and delivered the Completion Certificate to Alamo. As found by the jury, plaintiffs represented to Briercroft Service Corporation that they were satisfied with the home improvements done to their residence by Alamo.

The appealing defendants made no effort or attempt to foreclose the lien against plaintiffs' real property, which was given as security for the payment of the note.[1] They did, however, seek a recovery from plaintiffs on the balance due on the note.

In order for plaintiffs to have a cause of action under the DTPA they must qualify as "consumers." *Kennedy v. Sale,* 689 S.W.2d 890 (Tex.1985). A consumer is defined in Section 17.45(4) of the DTPA as "an individual partnership, corporation or governmental entity who seeks, or acquires by purchase or lease, any goods or services." Section 17.45(2) of the Act defines services as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods." In *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893, 895 (Tex. 1962), "services" was defined as "action for use that furthers some end or purpose: conduct or performance that assists or benefits someone or something: deeds useful or instrumental towards some object."

In the case at bar, we hold that while plaintiffs were "consumers" as to Alamo,

---

1. The lien was invalidated and set aside by the trial court in its final judgment. That action is not challenged in this appeal.

they were not consumers as to Briercroft Service Corporation and Briercroft Savings Association. Plaintiffs contracted with Alamo for the construction of improvements to their home, which amounted to a purchase of goods and services. However, plaintiffs sought only the extension of credit from the appealing defendants, or, to state it differently, they sought only to borrow money to pay for the improvements. A person who seeks only to borrow money is not a consumer because the lending of money invokes neither a good nor a service. *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980); *La Sara Grain v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984).

Plaintiffs argue that the appealing defendants are liable in damages for violation of the DTPA under the rule of "inextricable intertwining" as stated in *Knight v. International Harvester Credit Corporation*, 627 S.W.2d 382 (Tex.1982), and under the rule of "unconscionable cause of conduct," as stated in *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705 (Tex.1983). We disagree. Both cases are distinguishable on the facts from the instant case.

In *Knight*, the plaintiff purchased a used truck from the defendant Etex. The sale contract included a waiver provision whereby the purchaser waived any claim or defense which he may have had against the seller of the truck, or the holder of the note. The note was assigned by the seller to International Harvester Credit Corporation (IHCC), the lending institution. The plaintiff alleged that the waiver provision in the contract violated Section 17.46(b)(12) of the DTPA. The Supreme Court agreed. The summary judgment evidence showed that the sale contract prominently bore the insignia of IHCC at the top of the first page, and on the reverse side was a preprinted clause assigning the contract to IHCC. Also, it was established that IHCC provided most of the contracts used by Etex in the sale of its vehicles.

Also in *Knight*, the contract, which was drafted by the lending institution, contained a clause which violated a provision of the DTPA; in the instant case, the contract, although furnished by the lending institution, did not contain a clause which violated any provision of the DTPA. In *Knight*, the contract which formed the basis of the suit contained on its reverse side a preprinted assignment assigning the contract to the lending institution; that is not the case here. In *Knight*, the violation of the DTPA was in the contract itself; in this appeal, the violation of the DTPA stemmed from the misconduct of the contractor, which was not known by the lending institution until after the disbursement of funds had been made to the contractor.

■ Whether there was "inextricable intertwining" is a question of fact. We hold that finding by the jury that the appealing defendants were not so inextricably intertwined with Alamo as to be equally responsible for the misconduct of Alamo is amply supported by the evidence. There is no evidence that such defendants misrepresented anything to plaintiffs or that they had anything to do with the construction of the home improvements.

In *Flenniken*, it was held that the Bank, the lending institution, acted unconscionably when it foreclosed its mechanic and builder's lien on the premises and sold the partially built house on the land owned by the plaintiffs. The Bank never asked the Flennikens, the home owners, to approve the $32,000.00 which was disbursed to the contractor during the construction and prior to the completion of the house. In the instant case, the contract created a mechanic's and materialman's lien on the house, which was assigned to the appealing defendants. However, no attempt was made by such assignees to foreclose the lien, and plaintiffs' house was not sold. Moreover, plaintiffs signed the Completion Certificate before the appealing defendants, the lending institutions, made any disbursements to the contractor. No disbursements would have been made but for the signing of the Completion Certificate by plaintiffs. The appealing defendants did not wrongfully exercise any power derived from the transaction. The assignment of the note and liens from Alamo to Briercroft Service Corporation and its as-

signment to Briercroft Savings Association was not a producing cause of plaintiffs' damages. There is no evidence that plaintiffs were adversely affected by any unconscionable action by the appealing defendants. These defendants did not commit any deceptive act relating to the financing of the home improvements contracted for by plaintiffs. The only connection that these defendants had with the actual transaction was making the loan, and that, of itself, is not a deceptive act.

The only evidence relating to the relationship between Alamo and the appealing defendants is found in the testimony of Leigh Ann Kirk, the quality control officer of Briercroft Service Corporation, and the documents themselves. We first consider the documents.

The Contract for Labor and Materials and Trust Deed provide for the construction of certain home improvements. The names "Briercroft Service Corporation" and "Briercroft Savings Association" do not appear anywhere in the document.

Alamo assigned the contract to Briercroft Service Corporation on October 3, 1983. The name of the assignee was typed in the blank line provided in the assignment. Briercroft Service Corporation assigned the note and liens securing same to Briercroft Savings Association on November 1, 1983. Again, the name of the assignee was typed in the blank line provided in the assignment. Exhibit 2 and the aforesaid assignments were recorded in the Deed Records of Karnes County, Texas, on November 17, 1983, with the notation "Return to Briercroft Savings Association" stamped thereon.

The Credit Application and the Truth in Lending Disclosures were forms required by the Secretary of Housing and Development (HUD) to be completed in connection with the making of a Title I loan by a lending institution. The appealing defendants furnished the forms to Alamo, who, apparently, assisted plaintiffs in their completion. On the reverse side of the Truth in Lending Disclosures are preprinted assignments of "this Retail Installment Contract" from the seller (Alamo) to Briercroft Service Corporation, and from the latter to Briercroft Savings Association. They were never executed by either of the assignors.

A note, payable to the order of Alamo, was executed by plaintiffs on October 31, 1983. It had stamped at the top in bold capital letters the words "BRIERCROFT SERVICE CORPORATION." The record does not show when such words were stamped thereon.

The appealing defendants and Alamo entered into an indemnity agreement on August 25, 1983. It was in force at all times relevant to this appeal.

Mrs. Kirk testified that the process of the appealing defendants working together with a contractor involved checking out the contractor, the supplying of references to defendants by the contractor, checking the references out, the sending of a letter and package of forms to the contractor, and communication by the contractor with defendants in relation to the proper use and execution of the contract documents. She further stated that in making Title I loans the documents do not have to be "our documents," and that as long as the documents meet the HUD requirements and the appealing defendants' requirements, "we accept them."

Ms. Kirk went to work for Briercroft Service Corporation in June 1984. She knew nothing personally about the transaction here involved. She testified that she did not have any idea "how many times Briercroft provided financing to customer of Alamo." She "guessed" that there were "15, 20" occasions where such financing was provided, and that "15 is a sort of halfway educated guess." [2] She did not know who prepared and completed the forms required to be completed by HUD regulations or by the appealing defendants' requirements. She testified that the Truth in Lending Disclosure form and the Completion Certificate form could have been completed by either Briercroft Service Corporation or by Alamo; she did not know. She further said that "We're not connected with any contractor that we do business

---

2. Such testimony is not evidence; it is mere speculation and has no probative force.

with," and that the appealing defendants do not tell any contractor how to approach its customers, what kind of work to do, or that they have to use the specific printed forms which the appealing defendants sent to them. She testified that the contract form which was executed by the parties was the appealing defendants' form. There is no evidence as to how many Title I loans were made by the appealing defendants in 1983, or how many contractors submitted applications to them under the HUD program.

Plaintiffs further contend that the appealing defendants not only are liable in damages for DTPA violations under the "inextricable intertwining" and "unconscionable action" rules (already discussed), but they are also liable because they and Alamo were a "person," as that term is defined in Art. 17.45(3) of the Act. In support of that position, they argue that such defendants and Alamo constituted a person "in that they were associated together, as shown not only by the sharing of documents, coordination of activities, and bestowing of benefits on each other, but also by the indemnity agreement of August 23, 1983." We disagree. The only involvement of such defendants with Alamo in the transaction was their agreement to make a loan to plaintiffs in the amount of $13,000.00, and to disburse that sum of money to Alamo upon the assignment of the note and lien securing same to them and the execution and delivery to them of the Certificate of Completion. That involvement does not make them and Alamo a "person" within the definition set forth in the statute.

In *Home Savings Association v. Guerra*, 733 S.W.2d 134 (Tex.1987), Louis Guerra, the home owner, brought suit against Modern Builders and Supply, the contractor, and Home Savings Association, the lending institution, to recover damages as a result of a home solicitation transaction. With respect to the issue of whether Home Savings Association was liable in damages to Guerra under the DTPA, the Supreme Court, speaking through Justice Campbell, said:

> In the absence of evidence and jury findings that Guerra was adversely af-

fected by a false, misleading or deceptive act or unconscionable action on the part of Home Savings, Home Savings has no liability under the DTPA. Although a consumer suing under the DTPA need not establish contractual privity with the defendant, he must show that the defendant had committed a deceptive act which is the producing cause of the consumer's damages. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985); *Cameron v. Terrell & Garrett*, 618 S.W.2d 535, 541 (Tex.1982). The DTPA does not attach derivative liability to a defendant based on an innocent involvement in a business transaction. *See, e.g., Light v. Wilson*, 663 S.W.2d 813, 814 (Tex.1983); *Cameron*, 618 S.W.2d at 541; *Building Concepts, Inc. v. Duncan*, 667 S.W.2d 897, 901 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). To hold a creditor liable in a consumer credit transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a deceptive act related to financing the transaction. *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex.1983); *Knight v. International Harvester Credit Corp.* 627 S.W.2d 382, 389 (Tex. 1982).

*Home Savings Association v. Guerra*, 733 S.W.2d at 136. The above holding applies to this case. Here, there is no showing that the appealing defendants had any connection with plaintiffs with respect to their contract with Alamo and there is no evidence that they committed a deceptive act related to financing the transaction.

We hold that Briercroft Service Corporation and Briercroft Savings Association did not violate the DTPA, and, therefore, are not liable in damages to plaintiffs. To hold otherwise would place them, the lending institutions, in the position of a guarantor of the contractor's performance of a home construction contract. That is not the purpose of the DTPA.

## THE ALLEGED VIOLATION OF THE CONSUMER CREDIT CODE

Plaintiffs alleged: 1) Alamo "negotiated, transferred, sold, or assigned the evidence

of indebtedness to defendant Briercroft Service Corporation prior to midnight of the fifth business day following the day that the contract was signed, and the contract was the result of a home solicitation transaction, so that Art. 5069–13.03(a)(6) was violated"; and 2) "defendant Briercroft Service Corporation failed to provide notice to plaintiffs of the negotiation of the sale of the evidence of indebtedness to defendant Briercroft Savings Association, in violation of Art. 5069–6.07."

TEX.REV.CIV.STAT.ANN. art. 5069–13.03(a)(6) provides that the Act is violated for any merchant to "negotiate, transfer, sell, or assign any note or other evidence of indebtedness to a finance company or other third party prior to midnight of the fifth business day following the day the contract was signed or the goods or services were purchased." Alamo violated this statute when it assigned the subject contract to Briercroft Service Corporation on October 3, 1983, which was prior to midnight of the fifth business day following the day the contract was signed. Briercroft Service Corporation did not negotiate, transfer, sell, or assign the contract to anyone on October 3, 1983. The assignment of the contract from Briercroft Service Corporation to Briercroft Savings Association was made on November 1, 1983, which was after the expiration of the five-day period set forth in the statute. There was no violation of the statute by either of the appealing defendants.

The next question to be decided is whether the transaction in this case is a "retail installment transaction," as that term is defined in Chapter 6 of the Consumer Credit Code. If so, then we must determine whether the appealing defendants are liable to plaintiffs for statutory penalties and attorney's fees because of their failure to notify plaintiffs of the negotiations of the assignments from Alamo to Briercroft Service Corporation and from the latter to Briercroft Savings Association.

The Consumer Credit Code, TEX.REV. CIV.STAT.ANN. art. 5069–6.01 (Vernon 1987) defines "retail installment transaction" and "retail installment contract" and "time price differential" in subsections (e), (f) and (h). These subsections, in pertinent part, read:

(e) "Retail installment transaction" means any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or retail charge agreement, as defined in this Article, which provides for a time price differential, as defined in this Article, and under which the buyer agrees to pay the unpaid balance in one or more installments, together with a time price differential ...

(f) "Retail installment contract" means an instrument (other than a retail charge agreement or an instrument reflecting a sale made pursuant thereto) entered into in this State evidencing a retail installment transaction (whether secured or unsecured). The term "retail installment contract" may include a chattel mortgage, a security agreement, a conditional sale contract ...

(h) "Time price differential," however dominated or expressed, means the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time ...

The term does not include the amount, if any, charged for insurance premiums, delinquency charges, attorneys' fees, court costs or official fees. Nor shall the term be in anywise considered as interest as defined by the laws of this State.

Art. 5069–6.02 lists various requirements and disclosures which must be contained in a retail installment contract, including: a) the cash sales price of the goods and services purchased by the buyer; b) the amount of the down payment; c) the difference between the above two items; d) the provisions applicable to insurance and official fees; e) the principal balance; f) the amount of time price differential; and g) the balance owed by the buyer, which is the sum of the last two items.

Under the above definitions, "a retail installment transaction" is limited to a transaction which is evidenced by a retail installment contract which provides for "a

time price differential" *as that term is defined in the statute.* It has been held that time price differential means the higher of two prices which a consumer (buyer) knowingly pays for the privilege of being permitted to pay for a purchase (of goods or services) over a period of time as opposed to immediately paying the full, but lesser, cash price. *Commercial Credit Equipment Corp. v. West,* 677 S.W.2d 669, 675 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.); *Weis v. Taylor,* 613 S.W.2d 332, 334 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.). *See also, Rattan v. Commercial Credit Co.,* 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd).

 In order for a transaction to be a "retail installment transaction," there must be a "cash price" and a "credit price" offered the buyer by the seller. *San Juan Pools, Inc. v. Krohn,* 594 S.W.2d 492 (Tex. Civ.App.—San Antonio 1979, no writ). A transaction charging "interest" cannot be a "retail installment transaction." Art. 5069–6.01(h).

The Consumer Credit Code, TEX.REV. CIV.STAT.ANN. art. 5069–1.01(a) defines interest as follows:

(a) "Interest" is the compensation allowed by law for the use or forbearance or detention of money; provided however, this term shall not include any time differential however denominated arising out of a credit sale.

TEX.REV.CIV.STAT.ANN. art. 5069–6.-07, in pertinent part, provides:

... No right of action or defense of a buyer arising out of a retail installment transaction which would be cut off by negotiation, shall be cut off by negotiation of the retail installment contract or retail charge agreement to any third party unless such holder acquired the contract relying in good faith upon a certificate of completion or certificate of satisfaction, if required by the provisions of Article 6.06; and such holder gives notice of the negotiation to the buyer as provided in this Article, and within thirty days of the mailing of such notice received no written notice from the buyer of any facts giving rise to any claim or defense of the buyer....

No notice of negotiation was given by either of the appealing defendants to plaintiffs.

Plaintiffs maintain that the transaction in this case is a "retail installment transaction." They rely on a statement in *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 327 n. 2 (Tex.1984), wherein it was said:

Generally, if a sale contract shows on its face that there is a cash price and a deferred payment price which are revealed to the purchaser at the time of the making of the contract, and that the finance charges are set forth as such, the amount of such finance charges will not be deemed interest, but a time price differential paid for the privilege of purchasing property to be paid for by the buyer in installments over a period of time.

*Schuenemann,* 668 S.W.2d at 327. However, *Schuenemann* is different from the instant case in that the transaction there was between the buyer and the original retail seller, and the transaction was financed by the retail seller. In *Schuenemann* and other cases similar to the fact situation therein presented,[3] the retail sellers were not disputing the fact that the transaction in question was a "retail installment transaction" or attempting to circumvent the Consumer Credit Code by showing the transaction was actually a "loan transaction." In those cases the retail seller was attempting to collect, upon default, all of the remainder of the debt *and* all of the

---

**3.** *De la Fuente v. Home Savings Association,* 669 S.W.2d 137, 141 (Tex.App.—Corpus Christi 1984, no writ), *overruled on other grounds, Home Savings Association v. Guerra,* 733 S.W.2d 134, 136 (Tex.1987); *Commercial Credit Equipment Corp. v. West,* 677 S.W.2d 669 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.); *Rotello v. International Harvester Co.,* 624 S.W.2d 249, 251 (Tex.App.— Dallas 1981, writ ref'd n.r.e.); *Jim Walter Homes, Inc. v. Gibbens,* 608 S.W.2d 706 (Tex.Civ. App.—San Antonio 1980, writ ref'd n.r.e.); *Mid-State Homes, Inc. v. Sullivan,* 592 S.W.2d 29 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r. e.); *Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.).

remainder of the installments in the "time price" transaction. That is not the case presented in this appeal.

■ The term "time price differential" relates to the amount of money which a buyer would have to pay if the sale of goods or services were "financed" by the *retail seller*, which, in their entirety, add up to a larger sum than the "cash price" which the buyer would have paid had he decided to pay cash for the contracted goods or services. In a "time price differential" transaction, the buyer agrees to purchase or take possession of the goods or services and to pay the price in installments over a period of time. It is different from the charging of "interest" on a "loan."

■ "Interest," as defined in the Consumer Credit Code, can only be charged where there is a charge for the "use or forbearance or detention of money." Therefore, before there can be a charge for interest there must be an extension of credit in the form of money.

Where a retail seller sells goods or services to a buyer under an installment payment plan over a period of time, a "time price differential" is charged. Where the retail sale is made possible by a third party who lends money to the buyer, the sale is accomplished by the making of a loan, where "interest" is charged. Where there is no "time price differential," there can be no "retail installment contract" evidencing a "retail installment transaction." A transaction charging "interest" cannot be a "retail installment transaction" under the Consumer Credit Code.

Alamo, the retail seller, never offered to make the home improvements for a "cash price," nor did it offer to perform the work for a "credit price." Both Alamo and plaintiffs, from the very beginning of the discussion concerning the home improvements, and at all time pertinent to this appeal, understood and agreed that plaintiffs' transaction with Alamo was to be financed by the extension of credit, in the form of a loan, from Briercroft Service Corporation. There is no provision in any of the documents constituting the contract

which indicates that plaintiffs or Alamo intended that the latter enter into a "retail installment transaction" with plaintiffs. There is no indication that it was intended that Alamo, itself, carry the transaction and charge a "time price differential" to allow plaintiffs to pay for the home improvements over a period of time.

As has been noted, the cost of the improvements was always stated as $13,-000.00. There was never a higher price offered for the privilege of "paying over time." However, the documents comprising the contract do reflect that "interest" was to be charged on a Title I loan to be made by Briercroft Service Corporation. In accordance with federal regulations, the "Truth-in-Lending" disclosures stated the "amount financed," the total of payments" and the "interest" rate. But, the "total of payments" is not the "time price"; it is the total cost of credit, which is required to be disclosed by federal regulations.

In the case before us in this appeal, plaintiffs did not purchase services from the appealing defendants but purchased money, which is not a good. *See Thompson v. First Austin Co.*, 572 S.W.2d 80 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.).

■ It is clear from the record that plaintiffs in this case signed the Credit Application to obtain credit (a loan) under the provisions of Title I of the National Housing Act. Federal regulations required the making of such application and the further signing of the Truth in Lending disclosures and completing the forms furnished to plaintiffs. The transaction in this case was a "property improvement loan" under title I of the National Housing Act, and not a "retail installment transaction" *as defined* in TEX.REV.CIV.STAT.ANN. art. 5069–6.01(e). *See, Gutierrez v. Gulf Coast Builders*, 739 S.W.2d 371 (Tex.App. —Corpus Christi 1987, no writ).

Since the transaction in this case is a "loan transaction" and not a "retail installment transaction," there was no violation by either Briercroft Service Corporation or Briercroft Savings Association of Art.

5069–6.05(7). This statute applies only where the transaction made the basis of suit is a "retail installment transaction."

Plaintiffs also assert that the contract was in violation of Art. 5069–6.05(7), because it provided for a first lien upon real estate (plaintiffs' homestead). The section states:

> No retail installment contract or retail charge agreement shall:
>
> ... (7) Provide for or grant a first lien upon real estate to secure such obligation, except, [sic] (a) such lien as is created by law upon the recording of an abstract of judgment or (b) such lien as is provided for or granted by a contract or series of contracts for the *sale or construction and sale* of a structure to be used as a residence so long as the time price differential does not exceed an annual percentage rate permitted under either this Chapter or Article 1.04 of this Title. [Emphasis added.]

Plaintiffs argue that the contract was not for the sale or construction and sale of a structure to be used as a residence, but rather for the improvement of a residence, and that since a first lien was purportedly granted, the law was violated. They rely on *De la Fuente v. Home Savings Association*, 669 S.W.2d 137, 141 (Tex.App.—Corpus Christi 1984, no writ), *overruled on other grounds, Home Savings Association v. Guerra*, 733 S.W.2d 134, 136 (Tex.1987).

 The National Housing Act permits the taking of a first lien on real estate in spite of the prohibitions contained in Art. 5069–6.05(7). *Gutierrez v. Gulf Coast Builders*, 739 S.W.2d 371, 372 (Tex.App.—Corpus Christi 1987, no writ). Thus, the state statute has been preempted by the federal regulations and statutes. There was no violation of Art. 5069–6.05(7) by either of the appealing defendants.

We hold that neither Briercroft Service Corporation nor Briercroft Savings Association violated any provision of Chapter 6 of the Consumer Credit Code. Therefore, neither statutory penalties nor attorney's fees can be recovered by plaintiffs. All points of error brought forward by the appealing defendants are sustained, and all cross-points of error brought forward by plaintiffs are overruled.

The judgment of the trial court insofar as it decreed that plaintiff recover $43,500.00, as damages, against defendants Briercroft Service Corporation and Briercroft Savings Association, jointly and severally, and attorney's fees as found by the jury, is REVERSED, and judgment is here RENDERED that plaintiffs take nothing in their suit against the said defendants.