In re Lucille REBECTOR, Debtor.

Lucille REBECTOR, Plaintiff,

v.

NOTE SERVICING CORPORATION, and
Prudential Development Co. Pension
Plan Trust, Defendants.

Bankruptcy No. 94–53518–RBK.
Adv. No. 95–5077–RBK.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Dec. 15, 1995.

**412**

Jose C. Rodriguez, San Antonio, Texas, for Plaintiff, Lucille Rebector.

James Patrick Brady, Houston, Texas, for Defendant, Prudential Development Co. Pension Plan Trust.

### OPINION ON MOTION FOR SUMMARY JUDGMENT

RONALD B. KING, Bankruptcy Judge.

This adversary proceeding involves the execution of a Builder's and Mechanic's Lien Promissory Note, a Builder's and Mechanic's Lien Contract and Deed of Trust, and a Proposal and Contract (collectively, the "Contract"). Under the terms of the Contract, Lucille Rebector ("Plaintiff") entered into an agreement with Ramon Korrodi which provided that Korrodi would make various home improvements for the cash price of $16,280.00, plus a finance charge of $18,920.98, for a total charge of $35,200.98. The total amount was to be paid in 120 monthly payments of $293.34 each, and the Contract disclosed that the annual percentage rate was 18 percent.

To secure payment of the Contract, Korrodi was given a Builder's and Mechanic's Lien upon Plaintiff's property. The Contract and lien were subsequently assigned to Prudential Development Company Pension Plan Trust ("Prudential"). On December 8, 1994, Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Note Servicing Corporation filed a secured claim in this case on behalf of Prudential. Plaintiff filed an adversary proceeding objecting to the claim, as well as seeking a declaration that the lien is invalid and seeking damages and attorney's fees for violations of the Texas Consumer Credit Code.

### DISCUSSION

#### 1. Retail Installment Contract

■ The Contract in this case constitutes a "retail installment contract" as defined in TEX.REV.CIV.STAT.ANN. art. 5069–6.01 (Vernon 1987 & Supp.1996). The Consumer Credit Code defines "retail installment transaction" and "retail installment contract" and "time price differential" in subsections (e), (f), and (h):

(e) "Retail installment transaction" means any transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or retail charge agreement, as defined in this Article, which

provides for a time price differential, as defined in this Article, and under which the buyer agrees to pay the unpaid balance in one or more installments, together with a time price differential....

(f) "Retail installment contract" means an instrument (other than a retail charge agreement or an instrument reflecting a sale made pursuant thereto) entered into in this State evidencing a retail installment transaction (whether secured or unsecured). The term "retail installment contract" may include a chattel mortgage, a security agreement, a conditional sale contract and a contract in the form of a bailment or a lease if the bailee or lessee contracts to pay as compensation for their use a sum substantially equivalent to or in excess of the value of the goods sold and if it is agreed that the bailee or lessee is bound to become, or for no other or a merely nominal consideration, has the option of becoming the owner of the goods upon full compliance with the provisions of the bailment or lease. A rental-purchase agreement that complies with the requirements of Subchapter F, Chapter 35, Business & Commerce Code, is not a retail installment contract.

· · · · ·

(h) "Time price differential," however denominated or expressed, means the amount which is paid or payable for the privilege of purchasing goods or services to be paid for by the buyer in installments over a period of time ... The term does not include the amount, if any, charged for insurance premiums, delinquency charges, attorneys' fees, court costs or official fees. Nor shall the term be in anywise considered as interest as defined by the laws of this State.

TEX.REV.CIV.STAT.ANN. art. 5069–6.01 (Vernon 1987 & Supp.1996) (footnote omitted).

██ A "retail installment transaction" is limited to a transaction which is evidenced by a "retail installment contract" which provides for "a time price differential" as that term is defined in the statute. It has been held that time price differential means the higher of two prices which a consumer knowingly pays for the privilege of paying for a purchase of goods or services over a period of time as opposed to immediately paying the full, but lesser, cash price. *Briercroft Serv. Corp. v. De Los Santos,* 776 S.W.2d 198, 210 (Tex. App.—San Antonio 1988, writ denied). In order for a transaction to be a "retail installment transaction," there must be a "cash price" and a "credit price" offered to the buyer by the seller. *Id.* (citing *San Juan Pools, Inc. v. Krohn,* 594 S.W.2d 492 (Tex. Civ.App.—San Antonio 1979, no writ)). A transaction charging "interest" is not a "retail installment transaction." TEX.REV.CIV. STAT.ANN. art. 5069–6.01(h) (Vernon 1987). The Consumer Credit Code defines interest as follows:

(a) "Interest" is the compensation allowed by law for the use or the forbearance or detention of money; provided however, this term shall not include any time differential however denominated arising out of credit sale.

TEX.REV.CIV.STAT.ANN. art. 5069–1.01(a) (Vernon 1987). Therefore, before there can be a charge for interest, there must be an extension of credit in the form of money. *Briercroft,* 776 S.W.2d at 211.

In *Briercroft,* the retail seller never offered to make the home improvements for a "cash price," nor did it offer to perform the work for a "credit price." Both the seller and plaintiffs always understood and agreed that the transaction was to be financed by the extension of credit, in the form of a loan, from Briercroft Service Corporation, a third party which lent money to the buyer. *Id.* The court explained the difference between a retail installment transaction and a loan transaction by stating:

Where a retail seller sells goods or services to a buyer under an installment plan over a period of time, a "time price differential" is charged. Where the retail sale is made possible by a third party who lends money to the buyer, the sale is accomplished by the making of a loan, where "interest" is charged.

*Id.* The court distinguished its case from *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324 (Tex.1984), because in that case the transaction was between the buyer and the retail seller and the transaction was financed by the retail seller. Where the facts are similar to *Schuenemann,* the transaction is a retail installment transaction subject to the Consumer Credit Code.

In this case, the retail seller financed the home improvement transaction. Ramon Korrodi was the contractor who was to provide the services and he was also the payee of the note used to finance the transaction. It is immaterial that the note was subsequently assigned to Note Servicing Corporation. *Morgan v. South Texas Home Serv.,* 75 B.R. 630 (Bankr.S.D.Tex.1987). A third party loan transaction did not arise because a third party did not lend money to the buyer. Therefore, the transaction is a retail installment transaction under the Consumer Credit Code.

### 2. First Lien

■ Article 5069–6.05 of the Consumer Credit Code prohibits an individual from taking a first lien on real property in a retail installment transaction. The statute provides:

> No retail installment contract or retail charge agreement shall:
>
> .    .    .    .    .
>
> (7) Provide for or grant a first lien upon real estate to secure such obligation, except, (a) such lien as it created by law upon the recording of an abstract of judgment or (b) such lien as is provided for or granted by a contract or series of contracts for the sale or construction and sale of a structure to be used as a residence so long as the time price differential does not exceed an annual percentage rate permitted under either this Chapter or Article 1.04 of this Title.

TEX.REV.CIV.STAT.ANN. art. 5069–6.05(7) (Vernon 1987) (footnote omitted). The lien taken in this case was a first lien on Plaintiff's property, in violation of article 5069–6.05(7), unless one of the exceptions applies.

Clearly, no judgment lien has been filed in this case and the first exception is not applicable. The second exception to the prohibition against taking a first lien on real estate in a retail installment transaction was discussed in *Ibarra v. Diversified Serv.,* 894 S.W.2d 1 (Tex.App.—Amarillo 1994, no writ). In *Ibarra,* the lienholder claimed that the lien was valid under the second exception to article 5069–6.05(7), which allows the seller to obtain a first lien if (1) the contract is for the sale or construction and sale of a residence and (2) then, only where the time price differential does not exceed the legal interest rate. *Id.* In *Ibarra,* the annual percentage rate was ten percent and, therefore, the court had to decide only whether the contract was for sale or construction and sale of a residence. *Id.* at 2. The contract provided for the installation of steel siding, insulation, storm doors, storm windows, and shutters for the buyer's home. The court concluded that the retail installment contract was not for the sale or construction and sale of a residence, but for home improvements. *Id.* Therefore, the contract did "not come under the [second] exception to art. 5069–6.05(7) because no exception exists for retail installment home improvement contracts creating first liens on real estate." *Id.* at 2–3. The court reasoned that to rule otherwise would violate the rule that provides that statutory words should be given their ordinary meaning. *Id.* at 3 (citing Tex. Gov't Code Ann. § 312.002(a) (Vernon 1988); *Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex.1992)); *see also Morgan v. South Texas Home Serv. (In re Morgan),* 75 B.R. 630 (Bankr.S.D.Tex. 1987).

The Retail Installment Contract signed by Plaintiff is in violation of article 5069–6.05 of the Texas Consumer Credit Code in that the Contract for home improvements provided for a first lien on Plaintiff's home. The lien is, therefore, invalid. *Ibarra,* 894 S.W.2d at 2–3; *Enell Corp. v. Longoria,* 834 S.W.2d 132, 134 (Tex.App.—San Antonio 1992, writ denied); *Morgan,* 75 B.R. at 633–634.

### 3. Time Price Differential

■ In this case, a time price differential of eighteen percent per annum was charged. Article 5069–6.02(15) provides:

(15) The dollar amount of the rate brackets prescribed by Section (9)(a) of this Article are subject to adjustment from time to time under Article 2.08 of this Title. As an alternative to the rates and amounts of time price differential provided by Section (9)(a) of this Article, the parties may agree to any rate or amount of time price differential not exceeding a rate or amount authorized by Article 1.04 of this Title.

TEX.REV.CIV.STAT.ANN. art. 5069–6.02(15) (Vernon 1987) (footnotes omitted). Article 5069–1.04(b)(1) provides that any rate of interest or time price differential may be agreed upon if it does not exceed eighteen percent per annum. There is, therefore, no excessive charge of interest or time price differential under article 5069–6.02(15).

### 4. Penalties

■ Article 5069–8.01(b) provides for the calculation of a penalty for a violation of the Consumer Credit Code as follows:

(b) Except as otherwise provided by a provision of this Subtitle, a person who violates this Subtitle by (i) failing to perform any duty or requirement specifically imposed on him by any provision of this Subtitle, or by (ii) committing any act or practice prohibited by this Subtitle, shall be liable to the obligor for a penalty calculated under one of the following procedures but not both:

(1) an amount not to exceed three times the actual economic loss suffered by the obligor as a result of the violation, together with reasonable attorneys' fees fixed by the court; or

(2) an amount up to twice the time price differential or interest contracted for, charged, or received but not to exceed $2,000 in a transaction in which the amount financed is $5,000 or less, and not to exceed $4,000 in a transaction in which the amount financed is in excess of $5,000 and reasonable attorneys' fees fixed by the court, if the court determines that the violation was material and the finder of fact determines that the violation induced

the obligor to enter into a transaction into which the obligor would not have entered into had the violation not occurred.

TEX.REV.CIV.STAT.ANN. art. 5069–8.01(b) (Vernon Supp.1996). There being no pleading or proof of actual economic loss suffered by Plaintiff, she may recover $4,000.00 as a penalty for the taking of a first lien because the amount financed exceeds $5,000.00.

■ In addition, Plaintiff may recover reasonable attorney's fees pursuant to article 5069–8.01(b)(2) because the violation was material and induced Plaintiff to enter into the transaction. According to the unrebutted summary judgment proof, Plaintiff's counsel spent at least 26.5 hours preparing and researching, plus time spent in court for the summary judgment hearing. The Court finds that reasonable attorney's fees of $5,000.00 should be awarded to Plaintiff.

### CONCLUSION

Judgment will be rendered voiding the lien on the property and awarding penalties of $4,000.00 and attorney's fees of $5,000.00 to Plaintiff against Defendant, Prudential. The Claim under the Contract should be allowed only as an unsecured claim. Summary judgment for Plaintiff will be rendered by a separate order.